GEORGE EVERHART. PETITIONER-APPELLANT, v. NEW-ARK CLEANING AND DYEING COMPANY, A BODY CORPORATE, DEFENDANT-RESPONDENT.

Argued May 19, 1937—Decided September 22, 1937.

For the appellant, *Charles M. Grosman.*

For the respondent, *Franklin J. Marryott.*

The opinion of the court was delivered by

HEHER, J. The decisive question is whether the Workmen's Compensation act of 1911 (*Pamph. L.* 1911, *pp.* 134, 763), as amended, grants compensation for mere bodily disfigurement, resulting in a material reduction of earning power. The award of the bureau based upon the disfigurement was thirty per cent. of .total permanent disability. It was reduced to ten per cent. by the Essex Common Pleas. The Supreme Court found a "very marked" facial disfigurement, caused by acid scars. It construed the statute to provide for "disability alone"—that which "disqualifies the employe from doing work in whole or in part;" and it held that, while the "disfigurement and scars on the claimant's face may well deter employment and thereby lessen his earning power, * * * they in nowise impair his ability to work," and there was therefore no "disability" within the intendment of the cited statute.

We read the statute differently. Its purpose is expressly declared to be (section II, paragraph 7) the provision of "compensation for personal injuries" arising out of and in the course of the injured servant's employment. But, by the same paragraph, compensation is to be made "according to the schedule contained in paragraph eleven." And that paragraph, as amended (*Pamph. L.* 1928, *p.* 281), provides compensation (a) "for injury producing temporary disability;" (b) "for disability total in character and permanent in quality;" and (c) "for disability partial in character, but permanent in quality," to be "based upon the extent of such disability." This latter subdivision then goes on to schedule specific compensation for the loss of enumerated physical members and functions; and, under subdivision (w), it is directed that "in all lesser *or other cases* involving permanent loss, or where the usefulness of a member or any physical function is permanently impaired," proportionate compensation shall be made. Where, as here, "the disability is determined as a percentage of total and permanent disability the duration of the compensation shall be a corresponding portion of five hundred weeks."

The provisions delimiting the scope of the statute are to be fairly construed to effectuate the evident legislative purpose. Nothing is to be read into the statute by judicial construction because of some supposed reason of policy. The primary subject of inquiry is the legislative intention, as expressed in the statute. The reason and spirit of the act, or, in other words, the apparent legislative intent disclosed by the language employed, considered in relation to the subject of the legislation, prevail over its letter; and there is therefore no warrant, in virtue of the rule of liberal construction, or otherwise, for the inclusion of matters not expressly provided, or reasonably to be implied. The rule of liberal construction lends itself, unless carefully guarded, to the judicial exercise of the legislative power.

Yet, in the ascertainment of the *quantum* of compensable disability suffered by the employe in the instant case, an allowance for disfigurement, in addition to the strictly functional loss ensuing from the scars, is within both the letter and spirit of the statute. The legislative object was to afford compensation for "disability" resulting from "personal injuries" bearing the statutory relation to the employment. *Sigley* v. *Marathon Razor Blade Co.*, 111 *N. J. L.* 25. Disability, actual or presumed, is the test of the employer's obligation to make compensation. Here the injured workman concededly suffered an accident in the statutory sense; and it is undeniable that it resulted in "personal injury," of which the disfigurement is an essential part. The extent of the disability flowing from the injury thus sustained cannot be gauged without taking into account the consequent disfigurement. It is just as much a "personal injury" as the impairment of physical function ensuing from the scars, and, to the extent that disability flows therefrom, it is compensable.

True, it cannot be classed as the "impairment" of the "usefulness" of a member, or of a "physical function," in the strict sense, but, considered in the light of the general statutory purpose to provide compensation for "personal injuries," it is plainly within the antecedent clause of subdivision (w) of paragraph 11, granting compensation "in all

lesser or *other cases* involving *permanent loss.*" If it be held that the significance of the adjective "lesser" is limited by the prior provisions for arbitrary allowances for the loss of a member or physical function, without regard to actual disability during the prescribed compensation period, the subsequent adjective "other," qualifying the same noun "cases," is demonstrative of a legislative purpose to include all other personal injuries "involving permanent loss" in the sense of disability. The word "other" is used in the ordinary sense of "additional or further; not the same; different; different or distinct from the one or ones mentioned or implied; different in nature or kind." *New Century Dictionary; Webster's New International Dictionary* (2d ed.).

The change of language effected by the legislature in the exercise of its amendatory power is significant of this purpose. The original act (*Pamph. L.* 1911, *pp.* 134, 138), after scheduling the compensation for specific injuries, *i. e.,* loss of members and physical functions, provided that "in all other cases *in this class,*" proportionate compensation should be made. By an amendment adopted in 1913 (*Pamph. L., pp.* 302, 304), proportionate compensation was granted "in all other cases in this class, or where the usefulness of a member or any physical function, is permanently impaired." In 1919 (*Pamph. L., pp.* 201, 204), the provision in its present form was incorporated in the statute, while in 1923 (*Pamph. L., pp.* 101, 104), there was inserted, without phraseological alteration of the clause referred to, the proviso that "in cases in which the disability is determined as a percentage of total and permanent disability the duration of the compensation shall be a corresponding portion of five hundred weeks."

Although the compensation afforded by the statute is based upon and is measured by the workman's earnings, the test of liability is not the immediate impairment of earning power; it is rather the loss ensuing from personal injury which detracts from the "former efficiency" of the workman's "body or its members in the ordinary pursuits of life." The benefits conferred by this particular provision have been classified by this court as in the nature of an indemnity for personal

injury sustained, rather than for the mere loss of earning power. See *Burbage* v. *Lee,* 87 *N. J. L.* 36; *DeZeng Standard Co.* v. *Pressey,* 86 *Id.* 469; *affirmed, sub nom. Pressey* v. *DeZeng Standard Co.,* 88 *Id.* 382; *Sulowski* v. *Mutual Chemical Company of America,* 115 *Id.* 53. But, however this may be, the compensation is measured by the impairment of earning capacity, immediate or in the future. That is the essence of the statute. Whether the statutory compensation be placed in the one category or the other, the determinative is not the immediate loss of earning power.

Such is, in substance, the construction of the pertinent statutory provision adopted by this court in *Dent* v. *Butterworth-Judson Corp.,* 97 *N. J. L.* 322. It was there held that, in the allowance of compensation based upon the "decrease in the salability" of the injured workman's labor, due to the disfigurement consequent upon "the spattering of the acid on" his "head and face," there was "a correct application of the statute to the facts." This case was decided in 1922; and the non-exercise of the amendatory power during the intervening period is significant of legislative acquiescence in this judicial construction.

The British Workmen's Compensation act of 1906 (the prototype of ours), embodying a provision that, while differently phrased, is in substance not unlike ours in respect of the nature of the basic compensable injury, has been construed to include disfigurement within the statutory category, although not specified *eo nomine.* Compensation is directed to be made for "personal injury by accident arising out of and in the course of the employment," if "total or partial incapacity for work results from the injury;" and it was held by the House of Lords that an accident necessitating the removal of a sightless eye, in consequence of which the injured workman "was unable (as "a one-eyed man") to obtain work in his employment, * * * though his ability to work remained exactly as it was before," was within the statute. *Ball* v. *William Hunt & Sons, Ltd.,* 1912 *A. C.* 496. Lord Chancellor Loreburn, noting that, while "the injury did not prevent" the workman "from being able to work,

\* \* \* it did (in the disfigurement) reduce him to a physical condition which prevented him from getting work suitable in the circumstances," said: "By the first section of the Workmen's Compensation act compensation is to be paid for personal injury by accident within the terms of the act. What the schedule does is to fix the scale and conditions. In the ordinary and popular meaning which we are to attach to the language of this statute I think there is incapacity for work when a man has a physical defect which makes his labour unsaleable in any market reasonably accessible to him, and there is partial incapacity for work when such a defect makes his labor saleable for less than it would otherwise fetch. \* \* \* And certainly the opposite view would leave a workman uncompensated for what may be very real and direct consequences of an injury." And Lord Macnaghten said: "But whether that be so or not, it is laid down most distinctly in this house (*Lysons* v. *Andrew Knowles & Sons, Ltd.* (1901), *A. C.* 79) that you must not resort to the schedule for the purpose of cutting down the right to compensation. The right to compensation is given by the act. The act is the workmen's charter. The schedule prescribes the scale of compensation and the mode and conditions of its enjoyment. That is the office of the schedule. The key to the meaning of the legislature is not to be looked for there."

And so the loss of a blind eye was held to be a "personal injury" within the meaning of the statute, because "incapacity for work" ensued therefrom, in that the workman's blindness was made observable, although his ability to work was none the less. Under our statute, the quality making for compensable injury is "disability;" and "disability" and "incapacity" are, in the popular sense and understanding, synonymous terms. While, unlike ours, the paramount object of the English statute has been held to be the provision of compensation "for the loss of the power to earn wages," the case is not for this reason to be rejected as dissimilar in principle. Conceivably, the disfigurement might be such as to result in total and permanent disability in respect of the labor for which the injured workman had been equipped; and it would plainly be

a perversion of the substantive intent and meaning of the statute to say that he was not entitled to its benefits, although, being unsuited to the work for which he was trained, he may find all employment cut off. Certainly, the disability of one so disfigured by burns as to be unable to follow his usual employment, but still not wholly incapacitated in the sense that he was stripped of all earning power, would ordinarily be much greater than in the case of one who, suffering the loss of a member, is nevertheless able to pursue his old employment without diminished earning power. We do not entertain the view that the legislature intended a distinction so obviously illogical and unsound—one not in keeping with the spirit of the enactment.

It is the consequences of disability flowing from personal injury that the statute seeks to alleviate. The design was to effect a measure of economic security for the injured workman, or his dependents, in the event that death ensued, and to place the burden upon industry. Compensation is measured by his earning power.

Lord Macnaghten, in the case last cited, thus stated the apposite rule of construction: "It may be that the words 'incapacity for work' would not, in their ordinary meaning, *prima facie* apply to a case such as this, but it has been well established that in the construction of a statute it is perfectly legitimate to give to some of its words a meaning different from their ordinary meaning where that is necessary to forward and effect the main purpose and object of the enactment."

Nor is there any substance in the claim that "an award of compensation for disfigurement resulting from the same scars which supported the portion of the award based upon functional loss * * * amounts to an award of double compensation for the same injuries." Cases dealing with the provisions definitely prescribing the compensation for the loss of a member are obviously not in point. Here the disability is, in accordance with the direction of section II, paragraph 11 (w), *supra,* to be "determined as a percentage of total and permanent disability;" and "the duration of the com-

pensation" is expressly required to be "a corresponding portion of five hundred weeks." The extent of the disability flowing from the injury, whether it be the result of functional loss or disfigurement, is the criterion.

Thus it is that the Supreme Court erred in the construction of this basic provision of the statute; and we are therefore required to remit the record to that tribunal for a determination, in the exercise of its fact-finding authority, of the *quantum* of disability consequent upon the disfigurement concededly suffered by the injured workman.

We concur in the view expressed below that the counsel fee allowed is not, either as regards the amount or the apportionment, the subject of fair criticism.

The judgment of the Supreme Court is accordingly reversed, and the cause remanded for further proceedings in conformity with this opinion.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, CASE, BODINE, DONGES, HEHER, PERSKIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 13.