84 N.J. Super. 588 (1964)
203 A.2d 105
BENJAMIN E. ZUZA, PETITIONER-RESPONDENT,
v.
FORD MOTOR COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1964.
Decided August 13, 1964.
*589 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Verling C. Enteman argued the cause for appellant (Mr. Andrew S. Polito, of counsel).
Mr. Mortimer Wald argued the cause for respondent (Messrs. Wald, Soperstein & Franz, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
Respondent appeals from a judgment of the County Court, affirming a judgment of the Workmen's Compensation Division awarding petitioner 7 1/2% of partial total permanent disability for injuries to his right eye.
It was stipulated that petitioner's injury resulted from an accident arising out of and in the course of his employment on September 30, 1960, when, in the performance of a welding operation, sparks entered his right eye. The questions here presented concern (1) the nature and extent of the permanent disability, and (2) whether or not the award should be expressed *590 in terms of loss of function of the eye, rather than in terms of partial total disability.
Petitioner testified that he reported the accident immediately and was referred to the first aid services maintained at respondent's plant. There, treatment was administered consisting of boric acid washings and drops. This treatment was continued daily until October 4, when he was sent by his employer to Dr. Frank J. Errico, an ophthalmologist. At that time petitioner experienced "very sharp pain" in the eye and it had "started to water and started to blur and started to puffing." Dr. Errico made a diagnosis of "foreign body in the right eye with subconjunctival hemorrhage." The doctor removed some of the foreign matter which he said was located in the conjunctiva between the cornea and the semilunar fold, applied medication and placed a patch over the eye. Petitioner next saw Dr. Errico on March 29, 1961. At that time the cornea had become abraded because of the eye patch. He was seen again by Dr. Errico on April 3, 1961 when, according to the doctor, the abraded cornea had healed without scarification. He was last seen by this doctor three days later. Dr. Errico testified that at that time petitioner's right eye was normal with "healthy-looking cornea, and white conjunctiva except for a few black specks" which were the end result of the original foreign bodies.
When asked about his present complaints petitioner testified that the eye "puffs" and "waters"; that due to reading it "blurs"; that in bad weather it feels "funny"; that it feels "small" and he has "pains" in the eye.
It seems to have been agreed by all of the medical experts who testified, that petitioner's vision was not impaired by the accident. However, the doctors were in disagreement as to the nature and location of the damage to the eye, and also as to the extent of permanent disability resulting therefrom. Dr. Errico, who was called by petitioner for the purpose of establishing a factual foundation for a hypothetical question which was propounded to petitioner's ophthalmologist Dr. Frank Burstein, estimated the disability as 2% of the *591 right eye. Dr. Burstein on the other hand, as the result of examinations made on June 12, 1961 and July 7, 1962, estimated the disability as 30% partial of the right eye. Dr. Burstein's findings differed from those of Dr. Errico essentially in the respect that in the course of his examinations Dr. Burstein said he detected a "deep scar on the cornea" and "many metallic foreign bodies under the nasal bulbar conjunctiva."
Dr. Alvin Seligson, respondent's expert, substantially supported the testimony of Dr. Errico. He testified that when he examined petitioner on May 22, 1961, and again on July 11, 1962, no conjunctivitis was present and the cornea of the right eye was entirely normal. The only abnormalities which he observed were a few inert minute black specks not productive of disability, but for which he allowed 1% to 2% of the right eye merely by reason of their presence.
The case as presented required the determination of factual issues by the compensation judge which involved the credibility of petitioner and the various medical witnesses, and the weight to be accorded their testimony. In this connection, the judge stated:
"Dr. Errico's opinion was predicated on the assumption that the man's condition was fully healed and that only two foreign bodies remained in the conjunctiva. Dr. Seligson's opinion was likewise predicated on the same assumption except that he felt that six foreign bodies remained. Each of these doctors apparently overlooked or completely disregarded the petitioner's complaints.
I have observed the petitioner and I am thoroughly and completely convinced of his integrity and the validity of his complaints. The man was no novice in his occupation and had previously suffered the effects of sparks in his eyes and obtained medical treatment therefor and did not as a result seek to make a claim for workmen's compensation benefits. This fact convinces me that the man does not suffer from a `compensation neurosis.' I am satisfied that his present claim petition was filed only because he now suffers from the residual effects of the injury and perhaps also from the residual effects of the attempted removal of the foreign bodies which resulted in a hemorrhage and the wearing of the patch which resulted in the abrasion. In any event, I consider Dr. Burstein a more expert ophthalmologist than either Dr. Errico or Dr. Seligson, and I consider his evaluation as being more in line with the actualities presented by the proofs.
*592 Moreover, the right of a Judge of Compensation to analize the evidence and arrive at his own percentage of disability, declining to accept the estimates of either the petitioner's or the respondent's physicians, has judicial sanction."
Our independent examination of the proofs, considered in light of the superior advantages afforded the trier of the facts to determine questions of credibility, leads us to the same conclusions as were reached by the compensation judge.
The remaining point argued by respondent, viz., whether an injury to an eye causing permanent disability, but not involving diminution of visual acuity, should be measured in terms of partial loss of an eye, or partial total permanent disability, has not previously been decided in a reported case in this jurisdiction.
The section of the workmen's compensation statute pertinent to this branch of the case follows:
"N.J.S.A. 34:15-12. Schedule of payments
Following is a schedule of compensation:

* * * * * * * *
16 For the loss of vision of an eye, 200 weeks.

* * * * * * * *
22 In all lesser or other cases involving permanent loss, or where the usefulness of a member or any physical function is permanently impaired, the duration of compensation shall bear such relation to the specific periods of time stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule. In cases in which the disability is determined as a percentage of total and permanent disability the duration of the compensation shall be a corresponding portion of 550 weeks. * * *"
The plainly stated purpose of N.J.S.A. 34:15-12(c)(16) is to provide compensation payments for a complete or partial loss of vision as a part of a schedule similarly fixing stated benefits payable for total loss of members of the body or permanent diminution of the usefulness thereof, such as an arm, 34:15-12(c)(9), or the total or partial destruction of a physical function, e.g., loss of hearing, 34:15-12(c) (19).
On the other hand, N.J.S.A. 34:15-12(c)(22), supra, comprehends a situation such as is here present, where *593 permanent disability is established but the compensable injury and consequent disability are not specifically set out in the schedule. The words "other cases involving permanent loss" clearly import that in such a situation the workman shall not be deprived of compensation because the injury and disability from which he suffers are not definitively described in the schedule, but shall be compensated in the proportion which the disability bears to the total permanent disability. Compare Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108, 110-111 (E. & A. 1937).
Accordingly, we conclude that since the injury to petitioner's right eye was permanent in character, and did not affect the vision of the eye, his disability was properly evaluated in terms of partial total and permanent disability, pursuant to N.J.S.A. 34:15-12(c)(22).
Affirmed.