137 N.J. Super. 313 (1975)
349 A.2d 75
THOMAS A. ENGLISHMAN, PETITIONER-APPELLANT,
v.
FABER CEMENT BLOCK COMPANY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1975.
Decided November 24, 1975.
*315 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Mr. Alfred G. Osterweil argued the cause for appellant (Messrs. Osterweil and LeBeau, attorneys).
Mr. Robert J. Murphy argued the cause for respondent (Messrs. Vaccaro, Osborne & Curran, attorneys).
The opinion of the court was delivered by BOTTER, J.A.D.
Petitioner suffered a compensable accident on July 2, 1969, resulting in complete loss of vision in his right eye. After a hearing he was awarded the scheduled amount for the loss of vision, namely, 200 weeks of compensation, totaling $8,000, that sum having been tendered to him by respondent. In addition, the judge of compensation found that petitioner suffered a neuropsychiatric disability of 12 1/2% of permanent partial total, amounting to $2,750. However, petitioner was denied an award based on his claim for structural changes to the eye, and it is from this determination that he has appealed. Petitioner contends that in addition to the scheduled amount provided by N.J.S.A. 34:15-12(c) (16) for loss of sight in one eye he is entitled to an award for "structural" changes in the eye, especially the disfiguring effects of a turning out of the eyeball (exotropia).
It is conceded that petitioner suffered total loss of vision of his right eye. At the time of the accident he was employed full-time as a dispatcher for the Ridgewood, New Jersey, fire department and part-time for respondent, averaging approximately 25 hours a week. His work for respondent involved maintenance, such as painting, carpentry and electrical work. Following the accident petitioner continued to work at both jobs and was so employed at the time of the hearing in May 1974. At that time, however, he testified that he had just applied for a pension as a fireman after 27 years with the department.
*316 In addition to the loss of sight petitioner complained of tearing and irritation in cold weather, occasional redness and a wandering feeling in the eye. This latter condition was described as a feeling that the eye was going up and down, although it did not do so when he looked in the mirror. He also complained of occasional headaches, difficulty in concentration and apprehension about his future.
Testifying for petitioner, Dr. Nelson Policastro, a specialist in neurology and psychiatry, stated that petitioner suffered a post-traumatic anxiety neurosis manifested by nervousness, irritability, periodic headaches and anxiety or concern for the future because of the blindness in his right eye. He estimated petitioner's partial permanent disability at 20% of total from a neuropsychiatric standpoint. Dr. Abraham Effron, testifying for respondent, estimated permanent psychiatric disability at 3% of total.
Dr. Irving V. Berney, an ophthalmologist, also testified for petitioner. He had examined petitioner in October 1973. He found that as a result of the trauma petitioner developed a cataract of the right eye as well as exotropia. He estimated that in addition to the total loss of vision petitioner suffered permanent disability from structural changes in the eye, including scarring, subjective symptoms and poor cosmetic appearance due to the exotropia, amounting to 20% of partial total disability.
Addressing itself to the theory upon which compensation is based, our Supreme Court in Katz v. Howell Tp., 67 N.J. 51 (1975), recently stated:
Contrary to classical theories that workmen's compensation is based solely upon impairment of earning capacity, 2 Larson, Workmen's Compensation Law (1975), § 57.00, our statutory provision for compensation of partial permanent disability, N.J.S.A. 34: 15-12, subd. c. 22, has been authoritatively construed not to require a showing of "immediate impairment of earning power" but to be satisfied by a "personal injury which detracts from the `former efficiency' of the workman's body or its members in the ordinary pursuits of life.'" Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108, 111 (E. & A. 1937). Withal, however, the theory is *317 that "the compensation is measured by the impairment of earning capacity, immediate or in the future." Id. at 112. [at 63]
In Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108 (E. & A. 1937), a workman suffered marked facial disfigurement caused by acid scars. The lower court had held that although employment might be deterred, no award could be made for the scarring injury to the extent that it did not cause disability in terms of impaired working ability. In reversing, our highest court held that "an allowance for disfigurement, in addition to the strictly functional loss ensuing from the scars, is within both the letter and spirit of the statute." 119 N.J.L. at 110.
N.J.S.A. 34:15-12 provides a schedule of compensation for (a) temporary disability and (b) total permanent disability, as well as (c) disability which is "partial in character and permanent in quality." It enumerates a specific number of weeks of compensation for the loss of various members, such as an arm, leg, foot or hand, as well as fingers and toes and parts thereof. Subsection 16 provides a specific award of 200 weeks for "loss of vision of an eye." (Emphasis added.) Subsection 22 provides:
In all lesser or other cases involving permanent loss, or where the usefulness of a member or any physical function is permanently impaired, the duration of compensation shall bear such relation to the specific periods of time stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule. In cases in which the disability is determined as a percentage of total and permanent disability the duration of the compensation shall be a corresponding portion of 550 weeks. * * *
This section was construed in Everhart, supra, 119 N.J.L. at 110-111, to provide for "additional or further" compensation, apart from the specified scheduled loss of a member or function, where distinguishable personal injury has been inflicted.
Respondent contends that the legislative intent was to limit the award to a scheduled amount where the total loss *318 of a member occurs, so that if an arm is rendered totally useless, or sight of one eye is lost, the award for all physical injury to such member cannot exceed the maximum stated sum. Respondent concedes that an award for neuropsychiatric injury can be made under subsection 22 in addition to the scheduled amount for the total loss of function of the specified member, presumably because the injury is not to the member but to the psyche.
The judge of compensation agreed with respondent that no additional award can be predicated upon structural changes to a member that has been lost or become useless. Relying upon Zuza v. Ford Motor Co., 84 N.J. Super. 588 (App. Div. 1964), the judge of compensation said:
As for the other aspects of permanent disability, the petitioner raised the issue as to whether or not he should be entitled to a partial permanent disability for structural changes to the eye and, with respect to this issue, I found that, although there were structural changes to the right eye, he is not entitled to any permanent partial disability, and this is based on the reasoning in Zuza v. Ford Motor Company, 84 N.J. Super. page 588. This is the New Jersey Superior Court, Appellate Division, 1964.
In that case, the court held that, since he, the petitioner, did sustain an injury to his eye, which was permanent in character, and did not affect the vision of the eye (emphasis added), his disability was properly evaluated in terms of partial total and permanent disability.
That case is clearly distinguishable from this case wherein the petitioner did sustain a loss of vision to his eye and, like I say, there were no structural changes other than those to the eye itself. In view of this, his disability is clearly covered by N.J.S.A. 34: 15-12, Section 16.
We find this reliance upon Zuza misplaced. In Zuza a workman was injured when welding sparks struck his right eye. After treatment he was found to have normal vision, but an ophthalmologist detected a scar on the cornea and foreign metallic objects in his eye producing, in his opinion, permanent partial disability to the eye. The workman's complaints at the time of the hearing were pain, puffing and watering of his eye. He was given an award expressed in terms of a percentage of total disability, rather *319 than in terms of loss of the eye's function. This court affirmed, citing subsection 22 of N.J.S.A. 34:15-12(c) as authority. Thus, Zuza holds that compensation in terms of partial, total permanent disability may be awarded for physical or structural injury to an eye where there is no loss of vision, since such injury is not enumerated in the schedule of specific losses. The case does not hold that an additional award cannot be made for disability resulting from injury to a member whose function is lost, such as sight or hearing, separate and apart from the scheduled loss of function.
Everhart, supra, held that disfiguring, facial injuries may be compensable. And Sigley v. Marathon Razor Blade Co., 111 N.J.L. 25 (E. & A. 1933), held that neuropsychiatric disability is compensable in addition to the scheduled amount for loss of vision of an eye. A worker must be viewed in the perspective of the competitive market place. Cf. Barbato v. Alsan Masonry & Concrete, Inc., 64 N.J. 514, 526-529 (1974); Lightner v. Cohn, 76 N.J. Super. 461 (App. Div. 1962), certif. den. 38 N.J. 611 (1962); Rodriguez v. Michael A. Scatuorchio, Inc., 42 N.J. Super. 341 (App. Div. 1956), certif den. 23 N.J. 140 (1957).
As stated in Katz v. Howell Tp., supra, compensation is measured by the effect of an injury upon present or future earning capacity. Depending upon the occupation, a disfiguring injury to the eye may cause an impairment to the employee's earning potential in addition to that caused by loss of vision. The effect of such injury may be distinct and independent of "loss of sight," (see Sigley v. Marathon Razor Blade Co., supra, 111 N.J.L. at 29, 31) and thus compensable under subsection 22 as an instance of "other" permanent loss measured as a portion of total disability and not as a portion of the scheduled award for loss of sight.
On the record before us we cannot say whether such an award is appropriate in this case. The judge of compensation found that there were "structural changes to the *320 eye." He disallowed an award for such changes, but, in measuring the neuropsychiatric disability, he considered "petitioner's complaints" and the testimony of medical experts which included subjective symptoms.[1] Therefore, we are unable to determine whether the judge of compensation would have allowed an additional award for the disability caused by such "structural changes" apart from their neuropsychiatric effects. Accordingly, the case must be remanded for further findings.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The judge of compensation stated:

Obviously there is the usual disagreement between the medical experts as to the extent of this neuropsychiatric disability. However, considering the nature of the injury, that is, the complete loss of vision in one eye, together with the petitioner's complaints, together with the testimony of the experts, a fair and reasonable reflection of permanent disability is 12 1/2% of partial and permanent total for his neuropsychiatric disability, and I do so find. This would entitle the petitioner to 68 3/4 weeks at the $40.00 rate or $2,750.00.