EDWARD SAUNDERLIN, PETITIONER-RESPONDENT, v. E.I. DU PONT COMPANY, RESPONDENT-APPELLANT.

WILLIAM THOMPSON, PETITIONER-RESPONDENT, v. E.I. DU PONT COMPANY, RESPONDENT-APPELLANT.

ALPHONSE FERMANO, PETITIONER-RESPONDENT, v. E.I. DU PONT COMPANY, RESPONDENT-APPELLANT.

DOUGLAS COOPER, PETITIONER-RESPONDENT, v. E.I. DU PONT COMPANY, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 11, 1985—Decided February 28, 1985.

Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.

*Stephen T. Fannon* argued the causes for appellant (*Capehart & Scatchard*, attorneys).

*Robert M. Capuano* argued the causes for respondents (*Tomar, Parks, Seliger, Simonoff & Adourian,* attorneys).

The opinion of the court was delivered by

GREENBERG, P.J.A.D.

These matters come on before this court on appeals from judgments entered in the Division of Workers' Compensation. In each case the judge of compensation made an award for psychiatric disability attributable to petitioner's exposure to asbestos. While certain rulings were made by reason of petitioners' physical conditions, no appeals have been taken from these dispositions and thus we do not set them forth. What we are concerned with are the awards for partial, permanent psychiatric disability. Inasmuch as the appeals involve a common legal issue we consolidate them for purpose of disposition. The legal issue is whether an award for partial, permanent psychiatric disability may be made though not based on demonstrable objective medical evidence as required by *N.J.S.A.* 34:15–36, as amended by *L.*1979, *c.* 283, § 12, in partial, permanent disability cases. In each case the judge of compensation held that an award for partial, permanent psychiatric disability could be given even in the absence of demonstrable objective medical evidence upon which the award could be based. There was no finding in any of the cases of demonstrable objective medical evidence to support the petitioner's claim of psychiatric disability.

We conclude that the judges misinterpreted the amendments to the workers' compensation act in *L.*1979, *c.* 283, § 12, and consequently the judgments must be reversed. We hold that an award for partial, permanent disability cannot be made in a psychiatric case unless based on demonstrable objective medical evidence. Because of this conclusion we have determined to set forth our basis for it and then consider whether there was demonstrable objective medical evidence which could support any of the awards, for if we found such evidence in any

case we would remand it to the Division of Workers' Compensation for reconsideration under the standards we set forth.

The four cases were heard by two judges of compensation. The judge in the *Saunderlin*, *Thompson* and *Fermano* cases viewed the question before him as whether psychiatric disability still exists in the law in partial, permanent disability cases. He pointed out the long recognition of claims based on psychiatric bases. He then indicated a requirement that there be demonstrable objective medical evidence to support a claim of partial, permanent psychiatric disability did not comport with his understanding of an analysis of the Psyche. The judge thought that a psychiatric evaluation must be based upon the subjective concerns of the person being examined. The judge in the *Cooper* case pointed out that *N.J.S.A.* 34:15–36 does not mention psychiatric conditions in partial, permanent disability cases. He questioned how much objectivity could be found in cases involving claims for psychiatric disability. In each case the judge, after concluding that demonstrable objective medical evidence was not required, accepted the evidence of the petitioner's expert that the petitioner had a partial, permanent disability on a psychiatric basis. Consequently each petitioner received an award for partial, permanent disability for a psychiatric condition even though the judge of compensation did not find it to be evidenced by demonstrable objective medical evidence.

*N.J.S.A.* 34:15–36, the section of the workers' compensation act involved on this appeal, provides in pertinent part:

'Disability permanent in quality and partial in character' means a permanent impairment caused by a compensable accident or compensable occupational disease, based upon demonstrable objective medical evidence, which restricts the function of the body or of its members or organs; included in the criteria which shall be considered shall be whether there has been a lessening to a material degree of an employee's working ability. Subject to the above provisions nothing in this definition shall be construed to preclude benefits to a worker who returns to work following a compensable accident even if there be no reduction in earnings. Injuries such as minor lacerations, minor contusions, minor sprains, and scars which do not constitute significant permanent disfigurement, and occupational disease of a minor nature such as mild dermatitis

and mild bronchitis shall not constitute permanent disability within the meaning of this definition.

This provision of *N.J.S.A.* 34:15–36 was included in the amendments of the workers' compensation law adopted in *L.* 1979, *c.* 283, effective January 10, 1980, which the parties agree govern these cases. The definition of partial, permanent disability was the first statutory definition of such disability, *see Perez v. Pantasote, Inc.*, 95 *N.J.* 105, 111 (1984), and was intended to narrow the types of injuries for which awards could be made for such disability. The definition thus advanced the purposes of the 1979 amendments which were to eliminate awards for minor partial disabilities, to increase awards for the more seriously disabled and to contain the overall cost of workers' compensation. *Id.* at 114.

Inasmuch as it was well established before 1979 that in an appropriate case an award could be made for partial, permanent disability based on psychiatric disability the Legislature must have been aware that such claims were made. *See Englishman v. Faber Cement Block Co.*, 137 *N.J.Super.* 313 (App.Div. 1975). Yet it did not exclude claims based on psychiatric conditions from its requirement that there be demonstrable objective medical evidence for a claim of partial, permanent disability. Accordingly the judges of compensation made rulings directly contrary to *N.J.S.A.* 34:15–36 in allowing awards of partial, permanent psychiatric disability without finding that there was demonstrable objective medical evidence to support the claims.

Petitioners argue the requirement that there be demonstrable objective medical evidence to support a claim of partial, permanent disability cannot apply in psychiatric cases because *N.J. S.A.* 34:15–36 focuses on conditions causing restrictions of the functioning of the body or its organs or members. We disagree. We see no reason why the Legislature would have not wanted to limit psychiatric claims to those resulting in physical consequences. Indeed it seems to us that if a condition could

be compensable though not having such consequences the purpose of the 1979 amendments would be circumvented.

We find an additional reason within *N.J.S.A.* 34:15–36 to believe the requirement that an award of partial, permanent disability must be based upon demonstrable objective medical evidence applies in psychiatric cases. The 1979 amendments defined total and permanent disability to include physical and neuropsychiatric impairments. Thus it is clear that the Legislature in considering impairments under *N.J.S.A.* 34:15–36 did not overlook psychiatric conditions. Indeed it could reasonably be contended that by including neuropsychiatric impairments in the definition of total, permanent disability and not expressly including them in the definition of partial, permanent disability the Legislature intended to eliminate psychiatric claims in partial, permanent cases. But we do not so hold. We are satisfied that an award may be made for partial, permanent disability in a psychiatric case provided the conditions of *N.J.S.A.* 34:15–36 are satisfied.

Petitioners assert the requirement that a partial, permanent disability be based on demonstrable objective medical evidence cannot apply in a psychiatric case because a psychiatric diagnosis is largely based on the subjective complaints of the patient. Thus the requirement would in fact eliminate recovery in any psychiatric case. While there can be no doubt that the requirement will eliminate many claims, the records in these cases do not support petitioners' contention. The expert testimony presented by both petitioners and respondent indicates that there may be objective indicia of psychiatric disabilities. Dr. Richard D. Rubin, an expert witness on psychiatric problems called by petitioners, indicated that in cases of generalized anxiety disorder the following diagnostic criteria (among others) might appear: trembling, eyelid twitch, strained face, sweating, diarrhea, flushing, pallor and racing pulse and respiratory rate. These seem to us to be items that would be of a demonstrable, objective nature. Further we think that it is a matter of general knowledge that psychiatric conditions may be

evidenced by such objective manifestations as high blood pressure, weight changes, tremors and paralysis.

■ As we previously indicated we review the records to see if there is any basis to award partial, permanent disability under the requirements we have set forth. Each petitioner was required to establish he had a permanent psychiatric disability with demonstrable objective medical evidence showing: (1) a permanent impairment; (2) caused by a compensable accident or compensable occupational disease, (3) which restricts the functioning of the body or of its members or organs. *N.J.S.A.* 34:15–36. Demonstrable objective medical evidence means "evidence exceeding the subjective statement of the petitioner." *Perez v. Pantasote, Inc.*, 95 *N.J.* at 116. Of course the disability had to be serious enough to merit compensation. *Ibid.*

We conclude that petitioner, Edward Saunderlin, did not present evidence that could support a finding that he had a partial, permanent disability based on demonstrable, objective medical evidence. The evidence showed that Saunderlin has been employed by respondent intermittently from the early 1950's to present. Respondent admits Saunderlin had a potential for exposure to asbestos and was diagnosed as having an asbestos-related condition on September 19, 1980.

Saunderlin was 52 years old at the time of trial in January 1984. He first noticed having shortness of breath around 1974 or 1975 but he had smoked until February 1975. Due to his shortness of breath he tires easily and can no longer swim. At one time Saunderlin enjoyed farming as a hobby and extra source of income but he reduced this activity a few years ago. He also has limited his home repair and hunting activities.

Saunderlin testified he has suffered from anxiety since learning of his asbestosis condition. When he first found out about his condition he could not sleep at night though he has now adjusted to the anxiety. While he still works full time, eight hours per day, forty hours per week, he avoids overtime. Significantly while Saunderlin claimed to have anxiety attribut-

able to his condition he indicated that the first time he saw a psychiatrist was in preparation for trial. Indeed at oral argument his attorney indicated that his office referred Saunderlin and the other petitioners to the psychiatrist. Saunderlin stated that he has no job restrictions attributable to a psychiatric problem. Further he does not receive any medication or treatment for a psychiatric condition.

Rubin was called as an expert witness for Saunderlin. Rubin stated that Saunderlin's attorney had sent Saunderlin to him so that Rubin could testify at the trial. Rubin examined medical reports showing that Saunderlin suffered from pulmonary asbestosis. He took a history from Saunderlin. Based on the record and his findings Rubin said Saunderlin suffered from pulmonary asbestosis but the fear of having breathing problems and the fear of further exposure contributed to Saunderlin's physical disability and further limited his activity. Rubin concluded that Saunderlin suffered from psychoneurosis, anxiety reaction or generalized anxiety reaction. He acknowledged that while there may be objective indicia of generalized anxiety reaction, his findings were based on statements by Saunderlin.

Respondent called Dr. Harold Graff as a psychiatric expert in Saunderlin's case. Graff testified that Saunderlin was in good emotional health with no evidence of a psychiatric disability. He predicated his opinion on Saunderlin's ability to work full time, to function in daily life, and to eat, sleep and lead a life commensurate with his chronological age.

We conclude that the record contains no demonstrable objective medical evidence of any psychiatric condition or disability affecting Saunderlin. Rubin's examination consisted of the taking of a case history from Saunderlin, review of medical reports and review of X-ray reports and pulmonary function studies showing Saunderlin had arterial tension on exercise. Additionally Rubin asked Saunderlin if he had any complaints. But Rubin testified that Saunderlin exhibited no distress during his examination. Rubin's diagnosis of psychoneurosis anxiety

reaction was based upon Saunderlin's own statements. Rubin performed no clinical or laboratory tests to substantiate the claim of psychiatric disability. Nor did Rubin observe any physical manifestations of psychiatric disability.

Petitioner William Thompson has been employed by respondent from 1962 until now. There is no doubt that during his employment he had a potential for exposure to asbestos. Thompson was first made aware that he had an asbestos-related pulmonary condition in November 1979 by respondent's dispensary director who sent him to Dr. Egoville, a pulmonary specialist, for evaluation. Egoville advised Thompson that he had mild pleural fibrosis which possibly could be related to asbestos dust exposure. In February 1980 petitioner was diagnosed as having an asbestos-related disease.

Notwithstanding Thompson's condition he continued to work for respondent as an electrician, the same job title he had before the diagnosis. Though he complains of shortness of breath, being hoarse, tiring easily and limiting overtime, he works eight hours daily, 40 hours weekly. Thompson at one time smoked but he has abandoned the habit.

Thompson testified that he is unable to sleep well and is restless nearly every night. He tends to wake up prematurely when sleeping. He has limited his work around the house. Thompson bowls once a week but his ability to concentrate has somewhat lessened. He has reduced his activities with a band of which he is a member. He swims but not as much as previously.

Thompson indicated that after being told of his asbestos-related disease the problem was continuously on his mind. However except for single visits to Rubin and Graff, he has not seen a psychiatrist. Neither Rubin nor Graff made any recommendation to Thompson for him to receive medication for emotional problems. Further neither mentioned the possibility of psychiatric therapy to him. Thompson has not gone to the dispensary with complaints of any emotional problems since being told of

his asbestos-related condition. Thompson told Graff that he did not believe that his emotional problems hindered his ability to work in any way. A report from Dr. Morowitz, Thompson's expert on his physical pulmonary claim, was admitted into evidence and showed that he had pleural thickening which was indicative of asbestosis.

Rubin testified as Thompson's expert on the psychiatric claim. Rubin examined Thompson and took a history from him. Based on the record and the examination Rubin concluded Thompson suffered from psychophysiologic respiratory reaction and psychoneurosis, anxiety reaction. Rubin testified that psychophysiologic reactions are those in which a person develops a physical symptom due to emotional distress rather than organic disease. An example is when a person smells a chemical which is not really harmful and he starts coughing though a person without the condition would not cough. Rubin's basis for this diagnosis was that Thompson was coughing a nervous cough and clearing his throat in the office even in the absence of irritants. Further Thompson complained of coughing and wheezing in response to various fumes and odors. Rubin considered that it was reasonable to expect that someone without a psychophysiologic disorder would not have had this reaction. Rubin indicated his diagnosis of anxiety reaction arises from conflict that Thompson felt.

Graff testified as respondent's medical expert on the psychiatric allegations of petitioner's claims. He said Thompson suffered from a dysthymiac disorder with mild phobia but this condition was unrelated to the asbestos condition. Specifically Graff stated that Thompson was not disabled psychiatrically due to asbestosis. Graff indicated that Thompson's dysthymiac disorder was related to the death of his father and that his phobias were not disabling because they did not cause him to miss time from work. Rather they were based on childhood experiences and reactions and were not specifically related to present incidents. Graff said Thompson gave no indication of

any partial, permanent disability on a psychiatric basis due to his work-related asbestos condition.

We conclude that there is no demonstrable objective medical evidence that Thompson suffers from any psychiatric condition or disability. Rubin stated on direct examination that his psychiatric examination was essentially a verbal examination and a history. On cross-examination Rubin testified that his entire report was based on Thompson's subjective complaints and he did not perform any tests to make objective findings. It is true that Rubin saw Thompson cough and clear his throat and predicated his diagnosis of psychophysiologic respiratory reaction on this cough which Rubin characterized as a nervous cough. But Rubin testified that his opinion was based on the assumption that Thompson's cough had no organic, physiological basis and was a learned reaction. In reaching this conclusion Rubin gave no credence to Morowitz's report explaining Thompson's pulmonary complaints on a physiological basis. On cross-examination when he was asked whether Morowitz's report gave an explanation for Thompson's cough on an organic basis and would thus lead him to alter his opinion that the cough was explainable on a psychiatric basis, Rubin replied, "Are you asking me to be a pulmonary expert"?

Significantly notwithstanding the evidence of coughing the judge of compensation did not find that Thompson had a psychophysiological respiratory reaction which established his partial, permanent psychiatric disability. Accordingly even if we regarded Rubin's evidence as surviving the cross-examination it would have no significance for the judge of compensation was fully justified in not accepting it. The judge did make an award of partial, permanent disability for an anxiety reaction. Rubin's testimony on this point was predicated on petitioner's subjective complaints and was not supported by personal observations by Rubin of physical manifestations of disability. Rather Rubin's diagnosis was based on what Thompson stated to him. Further Rubin performed no clinical or laboratory tests to substantiate the claim. Graff listed several objective indicia of

psychoneurosis anxiety reaction and testified that Thompson failed to exhibit these signs and thus showed no evidence of a psychiatric disability.

Petitioner Alphonse Fermano has been employed by respondent from 1959 to the present time. Respondent admits that Fermano had a potential for exposure to asbestos and was diagnosed as having an asbestos-related disease on September 18, 1980. Fermano testified that when he was first told about his asbestosis condition it was on his mind continuously. He was concerned that the condition would shorten his life. He said that almost nightly he wakes up feeling like someone had his hands over his mouth cutting off his breath. Fermano testified that his condition has made it harder to work but that his job duties have remained the same. While in the past he rarely turned down overtime he now works only about half of his overtime opportunities.

Fermano testified that knowledge of his condition has affected his family life. He now "snaps" at his wife. He is no longer interested in working around the house. While at one time he hoped to build a new home he is afraid of dying and so is reluctant to burden his wife and family with a mortgage. Further he no longer goes surf-fishing because he is forced to stop and puff.

. Fermano admitted, however, that he was not under the care of a psychiatrist. In fact the first time he had ever seen a psychiatrist was in preparation for trial when he saw Rubin. He did not follow up that forensic visit with psychiatric treatment or medication.

Rubin testified as a psychiatric expert on Fermano's behalf. Rubin's examination of Fermano consisted of taking a case history from him and asking him about his complaints. In addition he reviewed medical records which showed that Fermano suffered from pulmonary asbestosis. Rubin did not give Fermano a physical examination. Rather his examination was entirely verbal with a few physical observations. Fermano

complained to Rubin that his problem was almost entirely mental and that once he learned of his asbestosis he became severely depressed.

On the basis of his conversation with Fermano and review of records and observations Rubin diagnosed Fermano as having a psychoneurosis with generalized anxiety reaction and cancer-phobia. Rubin thought that Fermano suffered from a partial, permanent disability. Rubin admitted that there may be objective evidence of psychiatric disability. For example muscle tension may be an objective and measurable criteria of a psychiatric disability.

Dr. Herbert Adler examined Fermano on behalf of respondent and testified as respondent's expert psychiatric witness. Adler's examination consisted of having Fermano answer a detailed questionnaire, going over the answers with him and discussing more thoroughly the issues raised by the questionnaire. Adler testified that Fermano did not exhibit a psychiatric disability as a result of his asbestosis. He pointed out that except for a sexual disfunction Fermano disclosed no functional disability. Adler said that while Fermano had been uncomfortable since he learned about his asbestosis this was normal and his reaction was not excessive, not irrational, and did not interfere with his normal and usual functioning.

As in the *Saunderlin* and *Thompson* cases we cannot find in the record demonstrable objective medical evidence to support a claim on behalf of Fermano of a psychiatric disability. Fermano relied on Rubin to supply this evidence. But Rubin did not give Fermano a physical examination. Instead he primarily based his diagnosis on his subjective impressions which he made after listening to Fermano relate his medical history and complaints. Notwithstanding his statement that there are objective indicia of psychiatric disability Rubin did not testify he observed any physical manifestations of a psychiatric disability in Fermano. Rubin's only observations were that Fermano was neatly dressed, alert, showed no respiratory distress at rest and

had no deficiencies of recent or remote memory based on routine questions. While it is true that Rubin testified Fermano indicated he was jittery at work this subjective statement by Fermano is insufficient to constitute demonstrable objective medical evidence.

Petitioner Douglas Cooper has been employed by respondent from 1961 until the present time. During his employment he had a potential for exposure to asbestos. On February 18, 1981 Cooper was examined by Dr. Joseph F. Kestner, Jr. on behalf of respondent. He was then told of the existence of some pleural thickening around the side of his lungs. Kestner indicated that there was a possibility that "something could develop" but that there was a good possibility that the condition would not progress. On March 2, 1981 a further diagnosis of Cooper's asbestos-related condition was made.

Cooper has continued to work for respondent as a pipe cutter on a 40 hours per week basis. Cooper has had some shortness of breath and a cough for a few years. However for a long time he was a heavy smoker. Cooper indicated he constantly thinks about the possibility of lung cancer. He no longer pushes himself on the job as he once did. While he still works some overtime he passes up chances to do that. He walks, hikes, skis and canoes. Additionally he does woodworking.

Before he was advised of his asbestos-related condition Cooper never received any psychiatric treatment. In fact the only psychiatrists he has ever visited were Rubin and Dr. Walden Holl, a doctor who examined him for respondent for purposes of litigation. Neither psychiatrist suggested to Cooper that he may need ongoing psychiatric treatment nor did they prescribe medication. Cooper testified that he never sought assistance for any emotional problems at respondent's hospital facility located at his place of employment.

Rubin testified as Cooper's medical expert on the psychiatric allegations of his claims. However his examination of Cooper was limited to a verbal interview. Rubin elicited pulmonary and mental complaints from Cooper. Cooper told Rubin that he

worries that his health will deteriorate because of the exposure to asbestos.

Rubin diagnosed Cooper as suffering from psychoneurosis, anxiety reaction. Rubin testified that as a result of Cooper's preoccupation with his health and his fear of future exposure and development of complications known to occur from asbestosis he has become markedly preoccupied with his breathing and health and fearful of being exposed to any kind of dust in the environment. This apprehension and constant dwelling on health problems has interfered with his ability to function. Rubin believed that Cooper has developed objective behavioral deficits in the normal pursuits of life not due to his physical disability but due to his nervous condition. Rubin admitted, however, that his diagnosis was based upon the statements made by Cooper. Rubin said that there may be observable signs which can corroborate a diagnosis of psychoneurosis, anxiety reaction. Here Rubin found no signs or observations of the conditions he described. Rather his testimony was basically a reiteration of Cooper's account.

Holl testified as respondent's medical expert on the psychiatric allegations of Cooper's claim. He found that Cooper displayed a normal range of emotions. Further Cooper exhibited no evidence of depression. His thought processes were lucid and goal oriented. Holl found Cooper's memory and orientation to be intact. Holl observed no sign of psychotic thinking, hallucinations, hysterical symptomatology, obsessional thinking, compulsive activity or phobic avoidance. Holl testified that Cooper suffered no psychiatric disability.

Our result in the *Cooper* case is identical to that reached in the other three cases. We find no demonstrable objective medical evidence of any psychiatric condition or disability in this case. Cooper's testimony regarding emotional or psychiatric complaints attributable to his asbestos-related condition is insufficient to establish a partial, permanent psychiatric disability. This defect is not cured by the addition of Rubin's testimony. Rubin's examination was based on taking a history from

Cooper and listening to Cooper relate his complaints. Rubin admitted that his diagnosis of psychoneurosis anxiety reaction was based upon Cooper's own statements. Such evidence is not competent to establish a psychiatric disability under the demonstrable objective medical evidence standard of *N.J.S.A.* 34:15–36. Rubin performed no clinical or laboratory tests which might have substantiated Cooper's claim. Nor did he observe any physical manifestations of psychiatric disability.

Insofar as the judgments award petitioners partial, permanent disability on the basis of psychiatric claims they are reversed and insofar as the petitions seek recovery for such claims they are dismissed. The matters are remanded to the Division of Workers' Compensation for entry of orders consistent with this opinion.