190 N.J. Super. 26 (1983)
461 A.2d 1179
DAVID ABDULLAH, PETITIONER-APPELLANT,
v.
S.B. THOMAS, INC., RESPONDENT-APPELLEE.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1983.
Decided June 3, 1983.
*27 Before Judges KING and McELROY.
Robert S. Sirota argued the cause for appellant (Goldstein, Ballen, O'Rourke & Wildstein, attorneys).
John P. Holly argued the cause for respondent (Geibel & Geibel, attorneys).
The opinion of the court was delivered by McELROY, J.A.D.
The employee here appeals contesting the amount the worker's compensation judge calculated to be due him for increased disability and the method by which his employer was credited for previous awards of partial permanent disability. The issues require interpretation of N.J.S.A. 34:15-12(c) and (d), as amended effective January 10, 1980. The undisputed facts follow. Appellant-employee will be referred to as petitioner and his employer as respondent.
Petitioner first injured his lower back in a statutory accident in 1973. Accidental injury to the same area occurred in 1974 resulting in a laminectomy in 1975. These events culminated in two awards in 1977 which totaled 25% of partial permanent for orthopedic disability and 5% of partial permanent for neurological disability. Thus, at the time the present awards were made to compensate petitioner for three subsequent statutory accidents *28 on February 19, 1979, May 20, 1980 and September 11, 1980, all of which aggravated and increased his lower back condition, he had previously been awarded $6,600 under the old schedule of N.J.S.A. 34:15-12, representing partial permanent functional disability of 30%.
The petitions for increased disability from the 1979 accident and the two accidents of 1980 were consolidated for hearing. The compensation judge held that all three accidents caused "strains superimposed upon the prior disc injury and some increase in neurological anxiety for the condition." He found a resulting overall partial permanent disability of 50% assessed as a 15% increase in orthopedic disability and a 5% increase in neurological disability. He held this increase of 20% disability to be attributable to these three accidents in the following manner.
The accident of February 17, 1979 caused an increase in disability of 7 1/2% of partial total, 5% orthopedic and 2 1/2 neurological. This disability was computed under the compensation schedule of N.J.S.A. 34:15-12(c) prior to the new amendment and entitled petitioner to 41 1/4 weeks at $40 per week, or $1,650.
The judge found that the accidents of May 20 and September 11, 1980 caused a combined increase of 12 1/2% of partial permanent disability which, under the medical proofs, could not be separated. These accidents having occurred after the effective date of new compensation schedule of N.J.S.A. 34:15-12(c), he calculated that petitioner was entitled to 75 weeks of compensation (12 1/2% of 600 weeks) at $47 per week for a total of $3,525. The judge gave the following rationale for reaching this figure:
[R]espondent is only liable for paying for that part of the disability which occurred in 1980 and ... even though [respondent] is entitled to credit for the prior awards, the credit amounts actually to not having to pay for whatever was paid in terms of disability....
In our judgment the compensation judge erred in holding petitioner only entitled to a weekly compensation rate of $47 payable over 75 weeks. This is the scheduled rate and prescribed period of payment for a disability of 12 1/2% of partial *29 permanent disability under the schedule of payments in effect at the time of this award. N.J.S.A. 34:15-12(c), L. 1956 c. 141, § 2. Plaintiff, however, was adjudicated to be 50% disabled as a result of the aggravating effects of the two 1980 compensable accidents superimposed upon his previous functional loss of 37 1/2% from the 1973, 1974 and 1979 accidents. Under the new "Disability Wage and Compensation Schedule" of N.J.S.A. 34:15-12(c), a worker who is 50% disabled and qualifies for the maximum weekly rate is entitled to payment of the maximum weekly rate for a period of 300 weeks (50% of 600 weeks). Because he falls within the schedule bracket of 271-300 weeks, he is entitled to 50% of statewide average weekly wages (SAWW). It is not disputed that the applicable SAWW figure is $246 a week. Petitioner's weekly rate is 50% of that figure, or $123, and is payable for 300 weeks. Golthelf v. Oak Point Dairies of N.J., 184 N.J. Super. 274 (App.Div. 1982). Although the employer is entitled to a credit for "previous loss of function" (37 1/2%), pursuant to N.J.S.A. 34:15-12(d), the legislative scheme does not contemplate that such an injured worker be treated as though he were only 12 1/2% disabled. Whether the previous loss of function was caused by prior compensable injuries or by a noncompensable injury or condition, we take the applicable principle to be that when a subsequent compensable injury acts upon preexisting impairment or condition and produces greater disability than might ordinarily flow therefrom, the award of workers' compensation must equal the full extent of impairment. Cf. Belth v. Anthony Ferrante & Son, Inc., 47 N.J. 38, 45-46 (1966); Kelly v. Alarmtec, Inc., 160 N.J. Super. 208, 212 (App.Div.), certif. den. 78 N.J. 340 (1978). This principle, applicable to cases arising before credit was given in 1956 for preexisting compensable disability (L. 1956, c. 141) and before credit was given for all types of previous loss of function by the recent amendment of N.J.S.A. 34:15-12(d) by L. 1979, c. 283, § 5, is based upon the proposition "that an employer takes his employee as he is." Kelly v. Alarmtec, supra, 160 N.J. Super. at 212. Clearly, that logic still applies, except that in order to *30 encourage hiring of workers with preexisting disabilities the employer now gets credit for the "previous loss of function." In corresponding fairness to a worker whose overall disability is increased by subsequent compensable accident, however, N.J.S.A. 34:15-12(d) does not provide that the employer is only liable for the disability superimposed upon the previous loss of function. It distinctly states, as to "previous loss of function," that "the employer or the employer's insurance carrier at the time of the subsequent injury ... shall not be liable for any such loss and credit shall be given ... for the previous loss of function...." We detect no ambiguity here. Overall disability must be used to determine the base against which credit is given to the employer or the carrier for previous functional loss. In our view, this comports with the legislative intent that the 1979 revisions of the compensation law "would make available additional dollars to seriously disabled workers...." Joint Legislative Statement accompanying Senate Bill 802 and Assembly Bill 840, L. 1979, c. 283, § 5 (1979).
We hold, therefore, that petitioner is entitled to payment for 300 weeks at $123 a week. This award totals $36,900, but under N.J.S.A. 34:15-12(d) respondent must be credited with the value of the "previous loss of function." N.J.S.A. 34:15-12(d), as amended, in pertinent part reads:
If previous loss of function to the body ... is established by competent evidence, and subsequently an injury ... arising out of and in the course of an employment occurs to that part of the body ... where there was a previous loss of function, then and in such case, the employer or the employer's insurance carrier at the time of the subsequent injury ... shall not be liable for any such loss and credit shall be given the employer or the employer's insurance carrier for the previous loss of function....
The statute does not indicate the method by which credit to the employer is to be calculated. It is necessary to resort to statutory construction, the goal being to effectuate "the legislative plan as it may be gathered from the enactment `when read in the full light of its history, purpose and context....'" State v. Gill, 47 N.J. 441, 444 (1966).
*31 Petitioner contends that proper interpretation of N.J.S.A. 34:15-12(d) requires that we measure his previous loss of function by looking to the dollar amount he was paid for the combined effects of the previous accidents in 1973, 1974 and 1979 and apply that figure against the total dollar value of his present disability of 50%. Since his previous disability totals 37 1/2% for the three prior accidents and was payable at the old statutory rate of $40 weekly, this amounts to $8,250. He asserts that this figure should be credited against the present value of his award of $36,900, making respondent responsible for payment of the remainder, or $28,650. Petitioner argues that although there is no law directly in point, the concepts applied in Paul v. Baltimore Upholstering Co., 66 N.J. 111, 130-131 (1974), warrant this method.
Paul interpreted N.J.S.A. 34:15-12(d) as it existed prior to the 1980 amendment. The statute then gave credit only in the situation where "previous loss of function" was due to "any previous compensable accident or accidents." It provided that "the employer or insurance carrier at the time of subsequent [compensable] injury shall not be liable for any loss for which compensation has previously been paid or awarded" and provided, "[i]n either event, credit shall be given to the employer or his insurance carrier to the extent of the previous loss for which compensation has been paid." As a result of three previous compensable heart accidents, the worker in the Paul case had received two awards totalling 50% partial permanent disability. These were paid at a weekly rate of $40. After returning to work he sustained a fourth myocardial infarction, aggravating his existing disability, and was determined to be totally disabled, entitling him to 450 weeks of compensation at the statutory rate of $83.33 a week. The compensation judge applied N.J.S.A. 34:15-12(d) and gave the insurance carrier that covered Paul's employer at the time of the fourth accident a credit of $11,000, the dollar value of the previous awards. The carrier contended that proper statutory credit would be for 275 weeks, the amount of weeks represented by the previous awards for 50% disability *32 and that number of weeks should be deducted from the 450 weeks due on the award for total disability. The Supreme Court rejected this approach, holding:
The statute requires the employer or his carrier to be given credit "to the extent of the previous loss for which compensation has been paid." It seems to us totally inconsistent with the beneficent interpretation of the compensation act to which an injured worker is entitled to say that a subsequent award of total permanent disability, required by the act to be paid at the higher weekly rates fixed for such a disability, was intended to be permitted to be watered down by devaluing the statutory period of weeks due therefor through a credit against that number of weeks of the lower-rated weeks of the former partial permanent award to the employee. The net result of such an approach would be nothing less than the denial to the workman of the full measure of the total permanent disability award adjudicated in his favor by the Division of Workmen's Compensation. [66 N.J. at 130.]
In our judgment the rationale of Paul only applies to N.J.S.A. 34:15-12(d) as it then existed. The statute then only required credit, as the Supreme Court noted, "to the extent of the previous loss for which compensation has been paid." In Belth v. Anthony Ferrante & Son, Inc., supra, the Supreme Court observed that when N.J.S.A. 34:15-12(d) was first enacted by L. 1956, c. 141, the statement "appended to the bill at introduction said the provision allowing the employer or insurance carrier `credit for any payments made in connection with a previous compensable accident to the same part of body, head, member or organ is equitable.'" 47 N.J. at 52. (emphasis supplied) We have emphasized the phrase "credit for any payments made" because it evinces legislative intent, later supported by the Paul decision, that because credit could only be given for disability previously compensated, the credit to the employer was properly made by dealing in dollars already paid.
We discern a different legislative intent in the recent amendment to N.J.S.A. 34:15-12(d). Prior to the new enactment previous loss of function from a non-work-related injury was not available to the employer as a credit. Belth, supra, 47 N.J. at 52; Kelly v. Alarmtec, Inc., supra, 160 N.J. Super. at 212-213. The amendment of L. 1979, c. 283 gives the employer credit for previous loss of function, whether work-connected or not. The *33 amendment removed the requirement that the previous loss of function had to be that "for which compensation has been paid" and merely required that credit be given "for the previous loss of function." The Joint Legislative Statement accompanying the 1979 amendment stated that the new "legislation would benefit employers by: (1) allowing credits for preexisting disabilities to employers in the determination of awards ..." (emphasis supplied).
It is previous disability for which credit is now allowed rather than "`credit for any payments made in connection with a previous compensable accident to the same part of the body....'" Belth, supra, 47 N.J. at 52. Because the act equally applies to preexisting disability caused by prior compensable accident and that caused by noncompensable injury, as to which there was no prior award, both situations must have been intended by the Legislature to be treated uniformly. Clearly, noncompensable previous loss of function ought to be assessed as it existed at or reasonably near the time when the subsequent compensable accident aggravated and increased it. It is then that evaluation of the extent of existing overall disability and previous loss of function ought to be made and the new compensation schedule is the gauge by which both are to be measured in order to give the employer the intended credit and at the same time treat workers with noncompensable preexisting disability, who had no prior award, and workers with compensable preexisting disability equally.
Thus, a worker such as petitioner who has a preexisting compensable disability of 37 1/2% of partial total who is rendered 50% disabled by a subsequent compensable accident and a worker with a preexisting non-compensable 37 1/2% disability also rendered 50% disabled and who also qualifies for the maximum weekly rate, should be treated in the following manner. The overall aggravated disability of 50% equals 300 weeks (50% of 600 weeks). The schedule of N.J.S.A. 34:15-12(c) provides that for disability, falling within the bracket of 271-300 weeks, the maximum weekly rate is 50% of SAWW, which at the time of *34 petitioner's accident was $246. Because the subsequent compensable accident was super-imposed upon and aggravated the preexisting disability, both workers are entitled, for the overall disability, to 300 weeks X $123, or $36,900. The extent of credit for the preexisting disability of 37 1/2% is determined by calculating 37 1/2% of 600 weeks or 225 weeks, which falls into the bracket of 211-240 weeks in the schedule and calls for a lesser maximum weekly payment of 40% of SAWW, or $98.40. That weekly rate multiplied by 225 weeks amounts to $22,140. This is the credit allowed to employer, leaving petitioner entitled to the remaining sum of $14,760 payable, under settled principles, at his maximum rate of $123 on a weekly basis.
In our judgment this method properly evaluates the previous disability and the subsequent overall disability within the legislative scheme which utilizes a graduated schedule of weekly payments in order to give greater compensation benefits to the more seriously injured workers while giving fair credit to employers for previous loss of function. It fairly strikes the balance of these somewhat conflicting purposes sought by the Legislature and set forth in the following statement of purpose of the Joint Legislative Statement which accompanied the introduction of the 1979 amendments to N.J.S.A. 34:15-12:
This bill is a revision of New Jersey Workers' Compensation Law and would make available additional dollars for benefits to seriously disabled workers while eliminating, clarifying or tightening awards of compensation based upon minor permanent partial disabilities not related to employment.
The bill would put significantly more money into the hands of the more seriously injured workers while providing genuine reform and meaningful cost containment for New Jersey employers from unjustified workers' compensation costs that are presently among the highest in the nation.
In our view of the matter, any other approach does injury to the statutory scheme of N.J.S.A. 34:15-12(c) and (d). The previous loss of function to which the employer is entitled as credit should be translated into a present value under the new schedule and applied as credit against the present schedule value of the overall injury for which the employer, by reason of the *35 subsequent compensable accident, is liable. If, for example, the previous loss of function, here 37 1/2%, were to be calculated by using the number of weeks of entitlement under the new schedule, i.e., 225 weeks, and that number of weeks were deducted from the 300 weeks scheduled for payment of a 50% disability, leaving the worker with but 75 weeks payable at $123 weekly, a result unfair to the worker would be accomplished. The previous loss of function of 37 1/2% is, under the compensation schedule of subsection c, a lesser injury drawing only $98.40 weekly, but, by the deduction of 225 weeks from the entitlement of 300 weeks, it would be treated as though it were the greater injury of 50% disability payable at $123 a week.
A major purpose of the new compensation schedule is to "make available additional dollars for benefits to seriously disabled workers." Ibid. A worker 50% disabled has sustained a severe loss of functional ability. Whether that degree of injury resulted from a single compensable accident or from a compensable accident that aggravated and enlarged a previous loss of function, the effect upon the worker is the same. Additional dollars are the intended recompense for severity of injury. Nowhere in the statute is there a declaration that a worker 50% disabled by combination of prior functional loss and subsequent compensable accident is to be treated as though he were out of the class of workers so disabled except that, in such case, his employer is to receive credit for the previous loss of function. Obviously, that previous loss must be fairly measured. The compensation schedule of subsection c, created with legislative deliberation to provide a varying weekly dollar rate of compensation dependent upon the degree of injury, provides the monetary gauge by which that credit is to be measured.
Accordingly, we vacate the judgment entered in the Division of Workers' Compensation and remand the matter for entry of a judgment for petitioner consistent with this opinion. We do not retain jurisdiction.