645 A.2d 158

AHMED N. AKEF, PETITIONER–APPELLANT, v. BASF CORPORA-
TION, CELOTEX CORPORATION, CHEMO DYNAMICS, INC.
AND THE SECOND INJURY FUND, RESPONDENTS–RESPON-
DENTS.

Superior Court of New Jersey
Appellate Division

Submitted May 24, 1994—Decided July 7, 1994.

Before Judges PRESSLER, DREIER and BROCHIN.

*Ball, Livingston & Tykulsker,* attorneys for appellant (*David Tykulsker* and *Lynne P. Kramer,* on the brief).

*Thomas H. Green,* attorney for respondent BASF Corporation (*John J. Jasieniecki,* on the brief).

*Magazzu, Speziali & Indyg* and *Tucker, Biegel & Goldstein,* attorneys for respondent Celotex Corporation (*David A. Speziali* and *Louis N. Magazzu,* on the brief).

*Cunneen & Rotella,* attorneys for respondent Chemo Dynamics, Inc. (*Thomas W. Polaski,* on the brief).

*Deborah T. Poritz,* Attorney General, attorney for respondent Second Injury Fund (*Nancy J. Shebell,* Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Petitioner Ahmed Akef appeals from the dismissal of his workers' compensation claim petitions against three of his former employers, BASF Corp., Chemo Dynamics, Inc., and Celotex Corp. The judge of compensation determined that under *Bond v. Rose Ribbon & Carbon Mfg. Co.,* 42 *N.J.* 308, 200 *A.*2d 322 (1964),

petitioner's claim for a cumulative occupational disease was properly brought against the current employer when, as *Bond* states, the disease is disclosed "by medical examination, work incapacity, or manifest loss of physical function." *Id.* at 311, 200 *A.*2d 322. The compensation judge determined that Celotex, petitioner's final employer, satisfied this test. However, since petitioner materially misrepresented his prior employment history and physical condition to Celotex, the compensation judge determined that petitioner was barred from claiming compensation from Celotex and dismissed the petition. Our consideration of this misrepresentation defense is a case of first impression. For the reasons hereafter stated, we reject this defense and remand the matter for a determination of the extent of petitioner's disability.

On January 5, 1987, petitioner filed a claim petition alleging that he had sustained neurologic, pulmonary, internal, reproductive and neuropsychiatric injuries from his exposure to various deleterious substances while employed by BASF. Over two years later, he filed a new petition alleging an aggravation of the preexisting conditions arising out of his employment with Celotex. During the pendency of this claim, Celotex joined Chemo Dynamics as an additional respondent, and the claim petitions were consolidated for trial.

When petitioner rested his case, Celotex moved for a dismissal of the consolidated petition on the ground that petitioner had materially misrepresented his medical condition on his Celotex employment application. Celotex contended that it had relied upon the misrepresented information, and that there was a direct causal relationship between the misrepresentation and petitioner's condition. Initially, the trial judge denied the motion. But following the conclusion of the hearing, and even though petitioner had some permanent pulmonary disability resulting from exposure to deleterious and noxious irritants while in the employ of all three respondents, and also suffered some acknowledged minimal permanent psychiatric disability, the judge determined that the extent of disability could not be fixed or apportioned among the

respondents. He found that the rule in *Bond v. Rose Ribbon & Carbon Mfg. Co., supra,* required a dismissal of the petitions against BASF and Chemo Dynamics. The judge then reversed his previous ruling on the affirmative defense of misrepresentation, and dismissed the remaining claim petition against Celotex.

Petitioner, an Egyptian by birth, was a chemist trained in Cairo. He emigrated to the United States in 1969 and took graduate courses in chemistry at the New Jersey Institute of Technology. He then worked for several chemical companies before being hired as a process development chemist by BASF for whom he worked from October 1977 through June 1986. During this employment he inhaled a variety of esoteric chemicals which precipitated an asthma condition and apparently also sterilized him. From 1981 to 1985 petitioner suffered from bouts of dizziness, shortness of breath, and coughing and chest pain for which he was treated by various physicians. By late 1985 he equated the effect on his breathing and his more frequent dizzy spells with the atmosphere in the BASF plant. His physician prescribed inhalers and pulmonary medication. On his last assignment for BASF, petitioner was in charge of a process which generated fumes aggravating his breathing difficulty and chest tightness. Fearing that he would be overcome by the fumes, he asked his supervisor to be relieved of the assignment and transferred to another area. When his request was denied, he left the job with BASF because he could not breathe. Immediately thereafter he returned to his physician and, while his chest x-ray was normal, the physician diagnosed asthma and prescribed various asthma medication.

While employed by BASF, petitioner was exposed to more than fifty chemicals and, although he had already fathered a child, a later examination disclosed that he was sterile. Petitioner's expert compared the list of chemicals to which petitioner had been exposed with the literature available on spermatoxic compounds. The expert determined that one or more of the chemicals to which petitioner was exposed at BASF constituted the major cause of petitioner's azoospermia (sterility). The expert ruled out other

possible causes such as heredity, mumps, radiation exposure, or endocrine, urologic or pituitary problems, and stated that petitioner's azoospermia is a permanent condition. When the condition was first disclosed after petitioner left BASF, his treating physician attempted steroid treatments, but later semen analysis continued to reveal azoospermia.

Petitioner's employment with Chemo Dynamics as an organic chemist lasted for only three weeks in early 1987. However, his employment there required work on reactions producing sulfur dioxide in a poorly ventilated area. The resultant coughing, chest tightness and dizziness necessitated continued medical treatment and his use of inhalers and bronchodilators. When petitioner was asked to work with prohibited chemical substances, he quit, but the termination of this employment was unrelated to his asthma.

Thereafter petitioner went from job to job, working as a security guard and then a store manager. Finally, in August 1987, he applied for employment as a security guard with Celotex. He claimed that he had been an assistant manager of a food store from 1973 through 1987, and did not list BASF or Chemo Dynamics as prior employers. He did not actively misrepresent his medical condition on the application, but rather merely failed to answer the question asking him to describe any physical limitations. The employee relations representative of Celotex was thus unaware that petitioner had asthma. As petitioner appeared qualified for the job, he was referred to the company doctor for a physical. Petitioner filled out a questionnaire in the doctor's office, but again failed to answer questions concerning chief complaints, symptoms and previous doctors. Furthermore, he misrepresented to the doctor that he was not taking any medication and had no somatic complaints other than being short of breath while climbing stairs. Petitioner claims that he did tell the doctor that he had asthma, but the doctor noted that petitioner stated he had asthma as a child. The physical examination revealed a clear throat and lungs, and the x-ray taken at the time was normal.

The doctor cleared petitioner for employment, and he began working as a security guard for Celotex in August 1987.

As a security guard, petitioner was required to walk long distances inside and outside the Celotex plant regardless of whether it was cold and windy or hot and muggy. When a sprinkler system was activated, a Celotex security guard was required to run through the plant to determine whether there was a fire. Although respirators were available for security guards, petitioner did not wear one, nor did the chief of security remember any occasion when a security guard had worn a respirator. The Celotex plant manufactured roof shingles and petitioner was constantly exposed to dust from hot asphalt and fumes from trucks entering and leaving the plant. He requested a mask, and his wearing the cloth mask helped him to some extent. After nine months of employment, petitioner was admitted to the hospital for treatment of an acute bronchial asthma attack and exacerbation of chronic obstructive pulmonary disease. He had bilateral inspiratory and expiratory wheezing, but a normal x-ray. When he was hospitalized he reported his asthmatic condition to Celotex and as a result was laid off.

Petitioner's present symptoms include depression, mood swings, lack of concentration, social withdrawal, confusion and even a suicidal preoccupation. He is filled with despair, emptiness and guilt which his experts relate to the loss of his job, his asthmatic condition and his azoospermia. He has a deteriorating relationship with his wife which began when he learned of his infertility, and although he had benefitted from psychiatric treatment in the past, he was forced to discontinue the treatment for financial reasons. He had additional hospitalizations and in October 1989 began receiving Social Security disability benefits.

Given the determination by the workers' compensation judge, we need not here evaluate petitioner's claim of complete disability or respondents' claims of minimal disability. The issue was never resolved by the trial judge and, as noted at the outset, we are remanding this matter and requiring that the judge determine this

issue. The thrust of our opinion concerns the misrepresentation defense upheld by the trial judge.

In New Jersey there are theoretically two systems for determining responsibility for a worker's injury. Under *N.J.S.A.* 34:15–1, absent an express or implied agreement for workers' compensation, employees' rights to sue their employers for injuries arising out of and in the course of employment and the defenses to such suits are regulated. However, the vast majority of employees in this State fall under the "elective compensation" provisions of *N.J.S.A.* 34:15–7 *et seq.* on the theory that if such workers' compensation has not been contractually rejected at the time of employment, the parties by agreement, express or implied, have accepted the provisions of elective compensation. In reality, the workers' compensation scheme has now become so ingrained in our society that it is not a matter of contract; rather it is legislated workers' protection. For all practical purposes, the employee's workers' compensation is a matter of statutory mandate, not voluntary contract. Therefore we reject the simplistic argument that the "contract" is vitiated by material misrepresentation at the time of hiring.

There are but a few statutory defenses to an employee's claim for elective compensation. *N.J.S.A.* 34:15–7 contains three defenses. The first is where "the injury or death is intentionally self-inflicted, or when intoxication or the unlawful use of controlled dangerous substances ... is the natural and proximate cause of injury or death" compensation need not be paid. The second is willful failure by the employee "to make use of a reasonable and proper personal protective device or devices furnished by the employer" where the device has "been clearly made a requirement of the employee's employment ... and uniformly enforced." The third is where the injury was occasioned by "recreational or social activities" which were not "a regular incident of employment" and did not "produce a benefit to the employer beyond improvement in employee health and morale." Where the claim, as in the case before us, is for an occupational disease there are two additional

defenses set forth in *N.J.S.A.* 34:15–30, namely: where "the injury or death by occupational disease is caused by willful self-exposure to a known hazard," and where such injury or death was caused "by the employee's willful failure to make use of a reasonable and proper guard or personal protective device furnished by the employer which has been clearly made a requirement of the employee's employment by the employer."

■ Since none of the stated exceptions applies in the case before us, we must here determine whether we should engraft a new defense: material misrepresentation in the employment application.

Some states have added a statutory misrepresentation defense to their workers' compensation law. *See* I *Mod.Work.Comp.* § 109:34 at 57–58 (Clark Boardman Callaghan 1993) (listing eleven states with some form of a statutory misrepresentation defense). *See also* Charles F. Carr and Rhonda K. Pitts *"Let the Liar Beware! Lying on Employment Application May Bar Recovery of Workers' Compensation Benefits,"* 16 *Am.J.Trial Advoc.* 737, n. 31–n. 33 (1993), (hereinafter Carr and Pitts) (listing eighteen such statutes, although these statutes mostly impose penalties for the general offense of fraudulently procuring workers' compensation benefits).[1]

---

[1] Some statutes are criminal or *quasi*-criminal in nature. *See Alaska Stat.* § 23.30.250 (guilty of theft by deception); *Ariz.Rev.Stat.Ann.* § 23–1028 (guilty of a class two misdemeanor and forfeits all right to compensation, benefits or payment after conviction of the offense); *D.C.Code Ann.* § 36–333 (misdemeanor conviction punished by fine of no more than $1,000 or by imprisonment of no more than one year, or both); *La.Rev.Stat.Ann.* § 23:1208 (punishable by imprisonment for six months to ten years and fines between $500–$10,000); *Mass.Ann. Laws* ch. 152, § 14 (if any party brings, prosecutes or defends proceedings with intent to defraud that "party shall be assessed, in addition to the whole cost of such proceedings and attorney's fees, a penalty payable to the aggrieved insurer or employee, in an amount not less than the average weekly wage in the commonwealth multiplied by six."); *Miss.Code Ann.* § 71–3–69 (guilty of a misdemeanor punishable by a fine of no more than $1,000 or by imprisonment of no more than one year, or both); *Mont.Code Ann.* § 39–71–316 (person who obtains or aids in receiving benefits that the person is not entitled to is guilty of

Other statutes merely deny compensation in the limited instance of occupational disease. *See Idaho Code* § 72–441; *Md.Code Ann., Lab. & Emply* § 9–502; *Mich.Comp.Laws Ann.* § 418.431; *Ohio Rev.Code Ann.* § 4123.70; *S.C.Code Ann.* § 42–11–80. For example the Idaho statute states:

> No compensation shall be payable for an occupational disease if the employee, at the time of entering into the employment of the employer by whom the compensation would otherwise be payable, falsely represented himself in writing as not having previously been disabled, laid off, or compensated in damages or otherwise because of such disease.

> *[Idaho Code § 72–441].*

Still other states, however, have adopted a misrepresentation defense by common law. *See* IC Larson's *Workmen's Compensation Law,* § 47.53, at 8–393 to 8–404 (1986). According to Professor Larson

> The following factors must be present before a false statement in an employment application will bar benefits: (1) The employee must have knowingly and wilfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury.

> *[Id.* at 8–394 (footnotes omitted) ].

This "Larson Test," has been widely adopted. According to Carr and Pitts, *supra,* seventeen states have judicially adopted Professor Larson's rule or some form of it.[2] *See also* Tracy A. Bateman,

---

theft); *Nev.Rev.Stat.Ann.* § 616.675 (punishable by imprisonment for one to ten years and fine of not more than $10,000 or both); *N.Y.Work.Comp.* § 114 (any person who willfully makes a false statement or representation for the purpose of obtaining any workers' compensation benefits shall be guilty of a misdemeanor); *R.I.Gen.Laws* § 28–33–17.2 (any employee attempting to obtain benefits to which he or she is not entitled is guilty of larceny); *Vt.Stat.Ann.* tit. 21 § 708 (person who by fraud willfully obtains a workers' compensation benefit shall be fined no more than $100 and shall forfeit all right to compensation); *W.Va.Code* § 23–4–19 (guilty of a misdemeanor, shall be fined no more than $5,000, or imprisoned no more than two years, or both, and in addition, the court shall order any person convicted to make full restitution); *Wyo.Stat.* § 27–14–510 (punishable by imprisonment up to ten years, fines between $750 and $10,000, or both).

2 Carr and Pitts cite the following cases: *Ex Parte Southern Energy Homes, Inc.,* 603 So.2d 1036 (Ala.1992); *Shippers Transp. v. Stepp,* 265 Ark. 365, 578

Annotation, *Eligibility for Workers' Compensation as Affected by Claimant's Misrepresentation of Health or Physical Condition at Time of Hiring*, 12 *A.L.R.*5th 658 (1993), also collecting the cases that have adopted or rejected Professor Larson's three-step misrepresentation defense.

The rationales for the application of the Larson test are varied. Arkansas, Florida and Georgia use the Larson rationale to extend to accident cases a statutory misrepresentation defense applicable only to occupational diseases. Delaware, Florida, Georgia and Minnesota predicate this defense on theories to protect their second injury funds. Neither of these theories, however, is particularly applicable to New Jersey, since there is no statutory defense to be extended, and our Second Injury Fund statute, *N.J.S.A.* 34:15–95, has no requirement that the employer have knowledge of the employee's preexisting physical condition for benefits to be paid. Unlike the funds in the cited states, the employee, not the employer, applies for benefits. *N.J.A.C.* 12:235–7.4(a).

Arkansas, Florida and Virginia partially base their adoption of the Larson test upon the employer's right to decline employment to an employee suffering a physical infirmity which might be aggravated by an industrial accident. The misrepresentation thus

---

S.W.2d 232 (1979); *Artcraft Sign Co. v. McGrath*, 679 *P.*2d 1103 (Colo.Ct.App. 1983) (court adopts Larson test), *rev'd on other grounds sub nom. Kraus v. Artcraft Sign Co.*, 710 *P.*2d 480 (Colo.1985) (reversing only because line on job application left blank, not filled in with dishonest answer) [note the similarity to the facts in our case]; *Air Mod Corp. v. Newton*, 59 *Del.* 148, 215 *A.*2d 434 (1965); *Martin Co. v. Carpenter*, 132 *So.*2d 400 (Fla.1961); *Georgia Elec. Co. v. Rycroft*, 259 *Ga.* 155, 378 *S.E.*2d 111 (1989); *Blanton v. Workmen's Compensation Bd.*, 531 *S.W.*2d 518 (Ky.Ct.App.1975); *Leach v. Detroit Health Corp.*, 428 *Mich.* 887, 403 *N.W.*2d 803 (1987); *Jewison v. Frerichs Constr.*, 434 *N.W.*2d 259 (Minn.1989); *Hilt Truck Lines, Inc. v. Jones*, 204 *Neb.* 115, 281 *N.W.*2d 399 (1979); *Martinez v. Driver Mechenbier, Inc.*, 90 *N.M.* 282, 562 *P.*2d 843 (Ct.App. 1977); *Cooper v. McDevitt & St. Co.*, 260 *S.C.* 463, 196 *S.E.*2d 833 (1973); *Federal Copper & Aluminum Co. v. Dickey*, 493 *S.W.*2d 463 (Tenn.1973); *McDaniel v. Colonial Mechanical Corp.*, 3 *Va.App.* 408, 350 *S.E.*2d 225 (1986); *Volunteers of Am., Inc. v. Industrial Comm'n*, 30 *Wis.*2d 607, 141 *N.W.*2d 890 (1966); *Long v. Big Horn Constr. Co.*, 75 *Wyo.* 276, 295 *P.*2d 750 (1956).

prevents the employer from protecting itself. In New Jersey, however, while the employer also takes the employee as he or she is, the employer gets credit for the "previous loss of function" in order to encourage hiring workers with preexisting disabilities. *N.J.S.A.* 34:15–12d; *Abdullah v. S.B. Thomas, Inc.,* 190 *N.J.Super.* 26, 29–30, 461 *A.*2d 1179 (App.Div.1983). Thus, the rationale of the cases employing this approach is only of limited relevance in New Jersey.

There are several jurisdictions that have refused to adopt the Larson approach. Carr and Pitts have found ten such examples: *Newport News Shipbuilding & Dry Dock Co. v. Hall,* 674 *F.*2d 248, 252 (4th Cir.1982) (Congress failed to recognize defense under Longshoremen's and Harbor Workers' Compensation Act); *Marriott Corp. v. Industrial Comm'n,* 147 *Ariz.* 116, 121, 708 *P.*2d 1307, 1312 (1985) ("[A]bsent express statutory authority, a misrepresentation as to physical health to a prospective employer should present no bar to recovery of compensation benefits for industrial injury."); *Kraus v. Artcraft Sign Co.,* 710 *P.*2d 480, 482 (Colo. 1985); *Teixeira v. Kauikeolani Children's Hosp.,* 3 *Haw.App.* 432, 435, 652 *P.*2d 635, 636 (Ct.App.1982) (Such a rule "must come, if at all, from the legislature, not the judiciary."); *Fontenot v. Cagle Chevrolet, Inc.,* 417 *So.*2d 1338, 1342 (La.App.1982), *writ denied,* 421 *So.*2d 1125 (La.1982); *Dressler v. Grand Rapids Die Casting Corp.,* 402 *Mich.* 243, 256, 262 *N.W.*2d 629, 634 (1978); *Goldstine v. Jensen Pre–Cast,* 102 *Nev.* 630, 631, 729 *P.*2d 1355, 1356 (1986). (Adoption of the Larson test is a policy decision which should be considered by the legislature rather than the court.); *H.J. Jeffries Truck Line v. Grisham,* 397 *P.*2d 637, 642–43 (Okla.1964); *In re Stovall,* 306 *Or.* 25, 38, 757 *P.*2d 410, 417 (1988). (A workers' compensation claim is not barred by an estoppel theory.); *Blue Bell Printing v. Workmen's Compensation Appeal Bd.,* 115 *Pa. Commw.* 203, 208–09, 539 *A.*2d 933, 935–36 (Commw.Ct.1988); (Misrepresentation is not a defense available to an employer under the Act.); *State Dept. of Highways & Pub. Transp. v. Thrasher,* 805 *S.W.*2d 798, 800 (Tex.Ct.App.1990).

As is cogently explained by the Supreme Court of Oregon:

It must be kept in mind that court decisions in cases arising under the Workers' Compensation Law interpret that statutory law. This seems to have been lost on some of the courts whose decisions are cited by Professor Larson, *supra*. Some of those courts obviously arrived at decisions denying benefits because those courts believed that they were free to engraft on the statutory schemes of their respective states the courts' ideas of what the common law or equity might require in the circumstances.

It also must be remembered that the passage of workers' compensation legislation, while giving to the worker the right to compensation regardless of fault, deprived the worker of the right to maintain an action for damages for injuries suffered by reason of the employer's fault. Early on, this court deemed the legislation was for the benefit of the worker. Whether or not it was exclusively so, that concept led this court to pronounce many times over the years that Oregon's statutory workers' compensation scheme was to be construed liberally in favor of the worker-claimant. . . .

In short, we understand the philosophy of the Workers' Compensation law to be that if a person is hired and is, in fact, working for an employer in the role of an employee and becomes disabled as a result of being so employed, the cost of the workers' disability is to be borne by the economy through the employing enterprise and not to be borne by the worker. That statutory policy should not be vulnerable to reopening the way in which a worker in fact obtained the employment when the worker is injured or contracts a disabling occupational disease on the job perhaps months or years after the event of hiring.

We conclude that public policy as expressed by the legislature weighs in favor of not defeating a claim for benefits by application of a doctrine not endorsed by the legislature. . . .

[*In re Stovall, supra*, 757 P.2d at 417–18].

Other reasons cited by courts for refusing to adopt the affirmative defense of misrepresentation in the absence of a statute creating this defense are: (1) it would advance the disfavored view that the employee must be free from fault in order to receive compensation; (2) it would defeat the purpose of the workers' compensation system which is to substitute a simplified and speedy administrative process to extend litigation unburdened by a multitude of employer defenses; and (3) it would disturb the existing delicate balance of the compensation system based on the employee's surrender of common-law right to sue the employer for negligence in exchange for the employer's surrender of most of its common-law defenses. *Marriott Corp. v. Industrial Comm'n of Ariz., supra*, 147 *Ariz.* at 121, 708 *P.2d* at 1312; *Goldstine v. Jensen Pre–Cast, supra*, 729 *P.2d* at 1356.

Celotex urges that the United States Supreme Court has adopted a misrepresentation test under the Federal Employers' Liability Act governing railroads' liability for negligently inflicted personal injuries on their employees. *Minneapolis, St. Paul & Sault. Ste. Marie Ry. Co. v. Rock,* 279 *U.S.* 410, 49 *S.Ct.* 363, 73 *L.Ed.* 766, *reh'g denied,* —— U.S. ——, 50 *S.Ct.* 79, —— *L.Ed.* —— (1929) (where an employee rejected for physical condition reapplied under a fictitious name and had a third party take the railroad's physical examination). On the unique facts in *Rock,* the Supreme Court stated that such an employee's "[r]ight to recover may not justly or reasonably be rested on a foundation so abhorrent to public policy." 279 *U.S.* at 415, 49 *S.Ct.* at 365, 73 *L.Ed.* at 770. However, a later examination of this same principle in *Still v. Norfolk & Western Ry. Co.,* 368 *U.S.* 35, 44, 82 *S.Ct.* 148, 153, 7 *L.Ed.*2d 103, 109 (1961), limited *Rock* "to its precise facts." Under *Still,* a railroad cannot defend a Federal Employers' Liability Act claim by proving that the employee made false representations as to his physical condition upon which the railroad relied in hiring him, even if the misrepresentation contributed to the injury or accident. 368 *U.S.* at 35–36, 44–45, 82 *S.Ct.* at 149, 153–154, 7 *L.Ed.*2d at 104–105, 109–110.[3]

---

[3] The Americans with Disabilities Act of 1990, 42 *U.S.C.A.* § 12101 through 12213 will also have an effect upon employers with fifteen or more employees. The Act prohibits discrimination against individuals with disabilities as defined in the Act, 42 *U.S.C.A.* § 12102(2), and specifically applies to job applications and medical examinations. 42 *U.S.C.A.* § 12112(a) and (d). It establishes a two-step hiring process. It permits a preemployment inquiry into the ability of an applicant to perform job-related functions, but permits preemployment physicals and medical questions related to the ability of the employee to do the job only after an unconditional or conditional offer of employment has been made, and the "conditional offer of employment" may be conditioned on the satisfactory physical examination. 42 *U.S.C.A.* § 12112(d)(2)(B) and (d)(3). The employer, however, is not permitted to question the applicant concerning his or her previous workers' compensation claim history or his or her disability. *See* 29 *C.F.R.* § 1630.13(a). The statute does not prohibit an employer from determining that the particular disability disclosed in a physical examination will prevent the employee from performing the job.

After reviewing these authorities, we determine that the better-reasoned approach, considering the New Jersey statutory scheme of workers' compensation as interpreted by the courts, is a rejection of both the Larson test and the misrepresentation defense. In reaching this conclusion we have considered related New Jersey cases, general rules of statutory construction, the liberal construction history of the New Jersey act, and the specific facts of this case.

In New Jersey, while there are no decisions specifically addressing the affirmative defense of misrepresentation of a health condition, we have considered the related issue of whether a fraudulent misrepresentation of an employee's age barred the application of the double compensation benefits under *N.J.S.A.* 34:15-10 to a minor claimant without an employment certificate. In *Fletcher v. Ehrlich*, 122 *N.J.Super.* 382, 384–385, 300 *A.*2d 581 (App.Div.1973), we held that such a misrepresentation made by either the minor or someone else will not preclude the recovery of the double compensation. *See also Chickachop v. Manpower, Inc.*, 84 *N.J.Super.* 129, 132, 140, 201 *A.*2d 90 (Law Div.1964) (reaching a similar result concerning misrepresentations of the employee's age and special skills); *cf. Ferraro v. Zurcher*, 12 *N.J.Super.* 231, 239, 79 *A.*2d 473 (App.Div.1951) (dealing with exaggeration or misrepresentation on the witness stand at a workers' compensation proceeding, and precluding punishment of the petitioner by denying "proper compensation for a disability otherwise sustained by the proofs").

The Legislature substantially revised the Workmens' Compensation Act in 1979 but did not include a statutory misrepresentation defense. The generally-recognized rules of statutory construction do not favor our now engrafting such a defense onto the

---

The New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 *et seq.*, also prohibits discrimination in hiring on the basis of disability. However, an employer should be able to determine whether a potential employee has a disability that would prevent the applicant's performance of the duties of the job.

existing statute. The statute already provides the enumerated exceptions quoted earlier. The provision for such exceptions in a statute indicates a legislative intent that the statute be applied to all other cases not specifically excepted. *State v. Reed,* 34 *N.J.* 554, 558, 170 *A.*2d 419 (1961); *Eyre v. Bloomfield Sav. Bank,* 177 *N.J.Super.* 125, 129, 425 *A.*2d 705 (Ch.Div.1980) (an express exception excludes other exceptions or the enlargement of existing exceptions). These principles were also applied in *Martin v. Snuffy's Steak House,* 46 *N.J.Super.* 425, 441, 134 *A.*2d 789 (App.Div.1957), where this court refused to engraft an aggressors' exception into the text of *N.J.S.A.* 34:15–7 exonerating employers from paying workers' compensation benefits in accidental injury cases.[4]

Additionally, the cases are legion over the years requiring the Workers' Compensation Act to be liberally construed in favor of the claimant. *See e.g., Squeo v. Comfort Control Corp.,* 99 *N.J.* 588, 596–597, 494 *A.*2d 313 (1985) and cases cited therein; *Close v. Kordulak Bros.,* 44 *N.J.* 589, 604, 210 *A.*2d 753 (1965). As noted in *Everhart v. Newark Cleaning & Dyeing Co.,* 119 *N.J.L.* 108, 110, 194 *A.* 294 (E. & A.1937):

> Nothing is to be read into the [Workers' Compensation Act] by judicial construction because of some supposed reason of policy. The primary subject of inquiry is the legislative intention, as expressed in the statute.... [T]here is ... no warrant ... for the inclusion of matters not expressly provided, or reasonably to be implied.

Lastly, the facts of this case also militate for our rejection of the Larson misrepresentation rule. Petitioner's condition was primarily caused by his employment at BASF, but his expert witness could not definitively apportion the percentage of disability to the

---

4 Celotex misreads this case as inserting an exception for a privately motivated personal feud. When the cited portion of this opinion is read in context, it appears that the court merely stated that where an aggressor engages in willful misconduct and is injured as a result, his injuries are noncompensable as not having arisen "out of" his employment. *Id.,* 46 *N.J.Super.* at 432, 441–442, 134 *A.*2d 789. This principle is totally inapplicable to the misrepresentation of an applicant's health status in a case where a later injury arises "out of" the employment.

respective employments. It is clear from petitioner's work history that, due to the problems encountered at BASF, petitioner became no longer employable in the field for which he was trained. If he is to be denied all compensation because of his misrepresentation to his final employer, industry as a whole receives a windfall and society a public charge (discounting petitioner's social security benefits). We must understand that it is only because of the rule, recognized to be arbitrary, in *Bond v. Rose Ribbon & Carbon Mfg. Co., supra,* 42 *N.J.* at 311, 200 *A.*2d 322, that the last employer is to bear the responsibility for workers' compensation payments. In another case, Celotex may be the employer that caused the initial injury and the last employer may be BASF. As noted by the Supreme Court, in the aggregate, these claims average out. ("Although this test is admittedly arbitrary and may on occasion cause some apparently unfair results, over the years it should result in an equitable balancing of liability. Under the circumstances we conceive it to be the fairest and most workable thesis." *Ibid.*). Absent a legislative directive to deny a person in petitioner's position all compensation, we see no basis to add a misrepresentation defense to the workers' compensation statute.

In addition to petitioner's pulmonary and related claims which clearly must be charged to Celotex, in this case petitioner also proved a claim for his azoospermia and associated psychiatric disability for which BASF appears solely responsible. In his dismissal of petitioner's claim, the trial judge failed to recognize that the claim against BASF for petitioner's sterility was deserving of adjudication in addition to the claim against Celotex for the asthma-related difficulties. The dismissal of the claim against BASF without findings, while an oversight, needs to be remedied on remand. *Lister v. J.B. Eurell Co.,* 234 *N.J.Super.* 64, 73, 560 *A.*2d 89 (App.Div.1989).

From this record, it appears that there is no basis of liability against Chemo Dynamics, and the dismissal of the claim against Chemo Dynamics is therefore affirmed. The dismissal of the claim against Celotex is reversed and remanded for findings

regarding the extent of petitioner's permanent pulmonary and associated psychiatric disabilities, and for the entry of an award of such compensation benefits as well as any temporary and medical benefits to which petitioner may be entitled. The dismissal of petitioner's pulmonary and associated psychiatric disability claims against BASF is affirmed; however, the dismissal of petitioner's azoospermia and associated psychiatric disability claims against BASF is reversed and remanded for findings of fact and an award of compensation, if deemed appropriate by the judge of compensation.