702 A.2d 519

AHMED N. AKEF, PETITIONER–APPELLANT, v. BASF CORP. AND CELOTEX CORP., RESPONDENTS–RESPONDENTS, AND THE SECOND INJURY FUND, POTENTIAL PARTY RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 21, 1997—Decided November 21, 1997.

---

Before Judges DREIER, PAUL G. LEVY and WECKER.

*David Tykulsker* argued the cause for appellant (*David Tykulsker & Associates*, attorneys; *Mr. Tykulsker, Penelope Caamano* and *Paul C. Renner*, on the brief).

*John J. Jasieniecki* argued the cause for respondent BASF Corp. (*Thomas H. Green*, attorney; *Mr. Jasieniecki*, on the brief).

*Debra M. Perry* argued the cause for respondent Celotex Corp. (*McCarter & English*, attorneys; *John C. Garde*, of counsel; *Ms. Perry* on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

We first considered this matter in 1994 when we held that liability for petitioner's permanent disability, based on acute bronchial asthma and its associated psychiatric disabilities, was solely the responsibility of Celotex, as his last employer, not subject to apportionment between or among BASF or The Second Injury Fund. We also held then that petitioner had proved a claim for azoospermia (sterility) and its associated psychiatric disability, for which BASF was solely responsible. *Akef v. BASF Corp.*, 275 *N.J.Super.* 30, 645 *A.*2d 158 (App.Div.1994), *aff'd* 140 *N.J.* 408, 658 *A.*2d 1252 (1995). We remanded to the judge of compensation to find "the extent of petitioner's permanent pulmonary and associated psychiatric disabilities, and for the entry of an award of such compensation benefits as well as any temporary and medical benefits to which petitioner might be entitled." *Id.* at 46, 645 *A.*2d 158. Also to be considered on remand were petitioner's azoosper-

mia and related psychiatric disability claims against BASF for an appropriate award of compensation. *Ibid.*

The judge of compensation complied with the remand directions. He found that "petitioner suffered no permanent disability ... from the azoospermia because he suffered no functional loss in the workers' compensation sense of the word." The judge did find, however, that petitioner suffered "some psychiatric disorders in the form of depression because of the azoospermia, and therefore that is related to his employment and does have a functional loss." He concluded that petitioner was not totally and permanently disabled, and granted a judgment of a partial pulmonary disability for bronchial asthma of forty percent of partial total and his "overall neuropsychiatric disability" from both the pulmonary and azoospermia disabilities to be ten percent of partial total. The judge found that the disability became fixed on July 5, 1989, his most recent examination by Dr. Susan Daum. The final result was a dismissal of the petition against BASF and a judgment against Celotex of 50% of partial total for petitioner's asthma and neuropsychiatric disabilities.

On appeal, petitioner contends he should have received an award of partial total disability against BASF based on his azoospermia; he should have received temporary disability benefits from Celotex, for his asthma condition, for the period from May 5, 1988 through July 4, 1989; and the counsel fee award of $10,000, divided 60% to Celotex and 40% to petitioner was erroneous and we should make a revised award.

*I.*

■ The petition was dismissed as to BASF when the judge determined petitioner suffered no permanent disability due to azoospermia. In his oral opinion, the judge said:

Petitioner has proven that he had a condition called azoospermia, which was related to his work. The azoospermia, which means he cannot produce children, has no other effect upon him. And my review of the medical testimony leads me to believe that petitioner suffered no permanent disability in the workers' compensa-

tion sense from the azoospermia because he suffered no functional loss in the worker's compensation sense of the word.

Petitioner appeals, claiming his reproductive capacity had been obliterated, and BASF is liable because this is an "injury [that] substantially interferes with other, nonwork-related aspects of petitioner's life." *See Perez v. Pantasote, Inc.,* 95 *N.J.* 105, 116, 469 *A.*2d 22 (1984).

Dismissal of this claim and limiting compensation to the psychiatric component, based on the finding that the azoospermia condition does not affect petitioner's ability to work, is too harsh. We reverse and remand for reconsideration of a proper award, and we hold that petitioner's azoospermia is compensable as a permanent partial total disability even though it did not diminish his earning capacity, because the record contains credible evidence that the azoospermia impaired his ability to carry on the ordinary pursuits of life.

In *Stepnowski v. Specific Pharmaceuticals, Inc.,* 18 *N.J.Super.* 495, 87 *A.*2d 546 (App.Div.1952), the employee sued his employer on a tort theory, arguing that he suffered sexual impotency as a result of being exposed to chemicals at his workplace. Justice (then Judge) Jacobs held that the petitioner's exclusive remedy was under the workers' compensation laws because such an injury was compensable under that system. He explained that the plaintiff had not suffered any diminution in his working or earning capacity as a result of these injuries. Despite this,

[o]ur courts have held, however, that a permanent injury which involves a loss of physical function and detracts from the former efficiency of the body or its member in the ordinary pursuits of life, is compensable, *even though there be no diminution in earning power or capacity to work.*

*Id.* at 499 [87 *A.*2d 546] (emphasis supplied).

More to the point, however, the petitioner in *Stepnowski* was exposed to dust particles of stilbestrol, a chemical containing female sex hormones, and he suffered permanent impairment by biological change so that he had permanent sexual impotency. Because the Workmen's Compensation Act had been amended effective January 1, 1950 to embody every "compensable occupa-

tional disease," it was held that the "deliberately comprehensive language [of the Act] includes the disease and injury alleged in the plaintiff's complaint; they arose out of and in the course of his employment and were due to the presence and his inhalation and absorption of stilbestrol dust particles, a cause or condition which was peculiar to the defendant's chemical trade, and to which the plaintiff had been exposed by virtue of his work." *Id.* at 498, 87 *A.*2d 546. *Accord Gibson v. Todd Shipyard Corp.*, 45 *N.J.Super.* 283, 291, 132 *A.*2d 337 (Co.1957), *aff'd o.b.*, 48 *N.J.Super.* 535, 138 *A.*2d 543 (App.Div.1958)(slow developing ventral hernia held compensable as an occupational disease).

That holding was supported by *Everhart v. Newark Cleaning & Dyeing Co.*, 119 *N.J.L.* 108, 111, 194 *A.* 294 (E. & A.1937)(bodily disfigurement which did not affect ability to work was compensable) and *Sutkowski v. Mutual Chemical Co. of America*, 115 *N.J.L.* 53, 178 *A.* 71 (Sup.Ct.1935)(despite worker's continuing ability to work at previous job held, injury was compensable). *See also Hercules Powder Co. v. Morris County Court of Common Pleas*, 93 *N.J.L.* 93, 95, 107 *A.* 433 (Sup.Ct.1919) (loss of a testicle in work-related injury was compensable even though there was no impairment in the ability to produce wages because "other spheres for the employment of human energy, talents and the possession of physical attributes beside the industrial world" were impaired).

In citing these precedents, the rationale of *Stepnowski* became clear, to wit, "a permanent injury which involves a loss of physical function and detracts from the former efficiency of the body or its member in the ordinary pursuits of life, is compensable even though there be no diminution in earning power or capacity to work." *Stepnowski, supra,* 18 *N.J.Super.* at 499, 87 *A.*2d 546.

Although *Stepnowski* and its progeny appear to be good law, the Supreme Court's statement in *Katz v. Howell Twp.*, 67 *N.J.* 51, 63, 335 *A.*2d 14 (1975) has to be reckoned with. The court cited *Everhart* for the proposition that there need not be an "immediate impairment of earning power" to make an injury compensable, but rather a personal injury which detracts from the

worker's pre-accident ability to perform the ordinary pursuits of life. However, the Court added that "the theory is that 'the compensation is measured by the impairment of earning capacity, immediate or in the future.'" *Ibid.*

Thus, *Katz* seems to say that the injury has to affect earning potential at some point, either in the future or immediately, to be compensable. This seems to be at odds with *Stepnowski* which did not require *any* loss in earning capacity to make an injury compensable, as long as there was a permanent injury that detracted from a petitioner's ability to participate in "the ordinary pursuits of life." However, the Court explained *Katz* in a more recent case, *Perez v. Pantasote, Inc., supra,* 95 *N.J.* at 111, 469 *A.*2d 22. It restated the *Everhart* rule that personal injury affecting the worker's body or its members in the ordinary pursuits of life was compensable. *Ibid.* Besides consideration of the lessening of an employee's working ability, "[a]nother criterion that may be considered in developing whether the injury is significant enough to merit compensation is whether the injury substantially interferes with other nonwork-related aspects of petitioner's life." *Id.* at 115–16, 469 *A.*2d 22; *see also Young v. Western Electric Co., Inc.,* 96 *N.J.* 220, 226, 475 *A.*2d 544 (1984). *Perez* provides that the amount of the compensation award is determined by the wages being earned at the time of injury, irrespective of whether or not they were subsequently diminished.

Therefore, we hold, consistent with *Stepnowski* and *Perez,* that petitioner's sterility is compensable even though by itself, it did not have any effect on his ability to continue working, and remand for calculation of an appropriate award based on the impairment of his nonwork-related but ordinary pursuits of life. We stress that the amount of the award for this condition need not take into account any decrease (or lack thereof) in the employee's working ability. *Saunderlin v. E.I. DuPont Co.* 102 *N.J.* 402, 410–11 n. 1, 508 *A.*2d 1095. (1986).

Additionally, the award limiting compensation for psychiatric impairment seems to have ignored the testimony of petitioner's

expert, Dr. Daum. She testified that the extent of petitioner's psychiatric disability was sixty percent of total. Since the judge of compensation did not reject Dr. Daum's estimate of pulmonary disability but just adjusted it, we cannot understand why his consideration of the psychiatric disability referred only to estimates of Dr. Flicker and Dr. Joseph but not Dr. Daum. We are confident that this was an oversight and an appropriate adjustment can be made on remand.

## II.

At the end of the trial, in December 1992, petitioner raised the issues of eligibility for temporary disability benefits and determination of the appropriate rate. The judge did not then evaluate either petitioner's claim of complete disability or respondents' claims of minimal disability, because he dismissed the petition due to petitioner's misrepresentation of his prior employment history and physical condition when hired by Celotex. We ordered the matter remanded, as noted above, for findings regarding the extent of petitioner's permanent and temporary disabilities, if any. On remand, the judge of compensation did not award temporary disability benefits, stating nothing about temporary disability during the course of his oral decision on remand, and writing only "none due" on the form of order for judgment.

Certainly the petitioner has the burden of proving his claims by a preponderance of the credible evidence. We ordinarily defer to determinations of judges of compensation when they are supported by "sufficient credible evidence in the record." *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965). But a judge of compensation has special expertise, and in order for us to defer to his determinations, we need to know what they are. Accordingly, we have held that "an ultimate conclusion of liability, without a reasoned explanation base on specific findings of basic facts, does not satisfy the requirements of the adjudicatory process because it does not enable us to properly perform our review function within the guidelines of *Close*." *Lister v. J.B.*

*Eurell Co.,* 234 *N.J.Super.* 64, 73, 560 *A.*2d 89 (App.Div.1989). That being the case here, we must once again remand for further consideration of the claim for temporary benefits and the appropriate attendant rate, to be specifically explained.

Petitioner urges us to decide these issues by exercise of our original jurisdiction pursuant to *R.* 2:10–5, contending that "all the elements for proof of temporary disability are more than sufficiently and unambiguously made out." That position is based on petitioner's claim that he could not work and was under active medical treatment for the period in question. Celotex counters by pointing to the absence of a medical opinion that petitioner was unable to work at that time, emphasized by comments in the hospital records to the effect that he was in "good condition" when discharged. This lack of medical evidence prior to Dr. Daum's examination may well be the basis for the judge's statement regarding temporary benefits, that "none [were] due." The judge was also critical of petitioner's credibility, noting that he tends to exaggerate. We will not speculate about the judge's decision, but we will remand for his reconsideration and explanation.

### III.

Petitioner asks us to exercise our original jurisdiction under *R.* 2:10–5, and either grant a larger counsel fee or reapportion the award differently than did the judge of compensation who required petitioner to pay forty percent.

■ A judge of compensation may award "a reasonable attorney fee, not exceeding 20% of the judgment." *N.J.S.A.* 34:15–64. Here, the only affidavits of services were submitted on appeal, not in the Division of Workers' Compensation, and we presume the award was made as a matter of judicial discretion. We will modify or set aside such an award only if it is manifestly excessive or inadequate, thus demonstrating an abuse of discretion. *See Strzelecki v. Johns–Manville,* 65 *N.J.* 314, 320, 322 *A.*2d 168 (1974); *Gromack v. Johns–Manville,* 147 *N.J.Super.* 131, 137, 370 *A.*2d

882 (App.Div.1977). Petitioner has not demonstrated any basis for modification of the award, and we decline to do so.

Reversed and remanded to the Division of Workers' Compensation for further consideration, in accordance with this opinion.